[No. 19759.   Department Two.   April 14, 1926.]

## G. W. GREGORY, *Respondent*, v. CHARLES E. PEABODY *et al., Appellants.*[1]

[1] VENDOR AND PURCHASER (144)—REMEDIES OF VENDOR—RIGHT TO RECOVER POSSESSION—BREACH OF CONTRACT. The verdict of a jury finding that a contract for the sale of land was breached by the vendor in declaring a forfeiture and taking possession before default, is not warranted by evidence that the vendor took possession of personal property on the land, held under another contract and transferred by the vendee to a third person at the time; there being no dispute as to the fact that he did not then take possession of the land, nor until after default and notice of forfeiture.

Appeal from a judgment of the superior court for King county, Ronald, J., entered October 15, 1925, upon the verdict of a jury in favor of the plaintiff, in an action for damages for breach of a contract for the sale of land. Reversed.

*Bronson, Robinson & Jones,* for appellants.

*Karr & Gregory, H. G. Sutton, George F. Hannan,* and *Ryan & Desmond,* for respondent.

¹Reported in 244 Pac. 998.

TOLMAN, C. J.—In March, 1923, appellants Peabody and wife entered into an executory contract with respondent Gregory, agreeing therein to sell to Gregory certain real estate known as Donnybrook Farm, for the price of $150,000; nothing to be paid down; $5,000 to be paid on or before January 1, 1924; and the further sum of $10,000 to be paid annually on or before January 1 of each succeeding year until the purchase price was fully paid; deferred payments to bear interest only after maturity at the rate of six per cent per annum.

On the same day, another contract was entered into by the same parties for the sale and purchase of the personal property then on the farm, for the agreed price of $10,058, payable $400 monthly.

Gregory immediately went into possession of both the real estate and personal property, but shortly thereafter the real interest under the contract covering the personal property passed to one Seeley, and Mr. Seeley secured a reduction of the monthly installments to $300 and in writing guaranteed their payment.

When the time arrived for the first, or $5,000 payment under the land contract, an extension of time thereon to February 1, 1924, was made, and there were negotiations between the parties looking toward the extension of all payments on the land contract for one year, which failed. On January 25, 1924, Mr. Peabody, believing, or assuming, that a default had occurred under the personal property contract in the failure to make the January payment, and fearing that the property, or the greater part in value, would be removed from the farm, elected to declare a forfeiture of that contract, gave written notice of such election, and on the next day placed a caretaker or watchman on the farm with these written instructions:

"Inasmuch as I have cancelled my contract with

G. W. Gregory for the sale to him of the cattle, horses and dairy equipment now located on my farm about 3 miles north of Bothell, known as 'Donnybrook Farm,' I hereby request you to take charge of all such cattle, horses and dairy equipment for me and not to allow any of the same to be removed or disposed of without my consent."

On January 27, Mr. Peabody, accompanied by one of his attorneys, went to the farm, talked to the men there employed by Seeley or Gregory or both, and with the caretaker; but a careful reading of all of the testimony on this subject convinces us that nothing was said or done by Mr. Peabody, or on his behalf, then or at any time before February 2, 1924, which in any manner went beyond the written instructions to the caretaker. On January 30, Mr. Gregory wrote and delivered to Mr. Peabody the following letter:

"Charles E. Peabody,                    January 30, 1924.
"614 Colman Bldg.,
"Seattle, Washington.
"Dear Sir:

"I regret very much that you saw fit to take possession of the herd of cattle and personal property located on Donnybrook Saturday, January 26, 1924, especially after the conversation I had with you before leaving for Ellensburg on the evening of Friday, January 25. I had arranged at that time to pay to you the five thousand dollars which was due on or before February 1st under our agreement, if no better terms could be made. You specifically promised me that things would remain as they were then until I could return, and it was at your suggestion that I had Mr. Seeley phone Mr. Arp at Eugene, Oregon, to come here for the purpose of making a deal. Funds with which to make this five thousand dollar payment which was due you the first of the month were left in my office Saturday morning, January 26.

"Upon my return from Ellensburg, I visited the farm on Sunday, January 27, and learned that you had

taken possession of the herd and had placed a man in charge of the same, and was informed that no one would be permitted to move anything from the farm.

"This I believe you had no right to do. You knew my deal with Mr. Arp depended upon my being in a position to deliver through Mr. Seeley the herd of cattle and personal property located on the farm, and when I could not do this I was compelled to tell Mr. Arp that I could go no further with him in the matter and his money which was deposited with me, was returned to him.

"I understand that you have made a deal direct with Mr. Arp. I therefore notify you that I will hold you personally responsible for the damages I have sustained in this matter.         Very truly yours,
                "Geo. W. Gregory."

And on the same day Peabody's attorneys answered that letter as follows:

"Mr. G. W. Gregory,         January 30, 1924.
"American Bank Bldg.,
"Seattle.
"Dear Sir:
    "Mr. Peabody has referred to us your letter of January 30th and asked us to answer the same upon his behalf.
    "Referring first to your contract with Mr. Peabody for the purchase of the farm, as to which he had agreed to extend the time for payment until February 1st of this year. As I told you in our telephone conversation on Monday, and now repeat, Mr. Peabody is entirely willing to stand by that arrangement and if you make the payments due under that contract on or before February 1st, 1924, they will be accepted as a compliance therewith.
    "I do not see where this has anything to do with the other contract for the purchase of cattle, horses and dairy equipment, as Mr. Seeley, who now claims to be the proprietor of that contract, asserts that it has been fully complied with and so I take it that there was no request for any extension in this connection.
    "For your information I enclose herewith copy of

letter which Mr. Peabody is today sending to Mr. Seeley.

"I also beg to advise that your understanding that Mr. Peabody has made a deal direct with Mr. Arp is incorrect.          Yours very truly,

"Bronson, Robinson & Jones,
"By H. E. Jones."

No payment was made or tendered under the land contract, and on February 2, 1924, Mr. Peabody undertook to cancel the land contract, writing to Mr. Gregory as follows:

"Mr. Geo. W. Gregory,        Seattle, Washington,
"911 American Bank Bldg.,          February 2, 1924.
"Seattle.
"Dear Sir:

"Inasmuch as you have failed to comply with the terms and provisions of our contract entered into March 29, 1923, for the purchase by you of Donnybrook Farm, I hereby declare said contract forfeited and terminated, and am re-entering and resuming possession of the premises.

"Please advise me at once if there is any property belonging to you on the premises and if so, what it is, and I will arrange with you for permission to remove it.               Yours very truly,

"Charles E. Peabody."

Out of these transactions two lawsuits arose, one by Seeley against Peabody for the conversion of the personal property, which is still pending and, being another story, need not be referred to further.

Mr. Gregory instituted this action, and by his original complaint claimed that Peabody's acts in repossessing the personal property were malicious and fraudulent as to him. We need not pursue the history of the pleadings; it is sufficient to say that they were amended, and that on the trial below, after extended arguments and a colloquy between court and counsel, the issue upon which we shall determine the cause was definitely

settled to be, "Did the defendants breach the land contract before the first day of February, 1924?"

The case was tried to a jury, resulting in a verdict in plaintiff's favor for $21,000, and from a judgment thereon the defendants have appealed.

[1] Among the errors assigned are the refusal to direct a verdict for the defendants and the denial of defendants' motion for judgment n. o. v. or, in the alternative, that judgment for plaintiff be for nominal damages only.

We have reached a conclusion upon the first of these which is decisive of the case, and the many other questions, elaborately briefed and argued by able counsel, need not be considered. We can find in the record no evidence of a breach of the contract by the appellants, nor of any fact from which a breach might be deducible. There is no dispute as to what was actually done, and no conflicting evidence upon the subject. That which comes nearest to raising such a conflict, or permitting the deduction which the jury evidently drew, is the testimony regarding the negotiations between appellants and Mr. Arp, referred to in respondent's letter above quoted. But we think that evidence wholly inadmissible. Appellants did, or did not, breach the contract by resuming possession of the land before a default occurred, thus depriving respondent of his rights under the contract. This must be proven by his acts with respect thereto, and not by his state of mind. As heretofore stated, the acts went no further than is shown by the written exhibits heretofore quoted, and it requires no argument to demonstrate that the two contracts between the same parties and made the same day contemplated that the rights and remedies of each should be enforceable without thereby breaching the other.

The personal property contract provides the usual

remedy on default, i. e., that the vendor may take immediate possession with or without process of law. The record supplies nothing from which can be determined whether or not that remedy was properly invoked; nor would such evidence be material here. If the vendor misconceived his rights, that will be determined in the other case. Having abandoned the issue of malicious and fraudulent conduct (if that were ever maintainable), and submitted the case finally upon the sole issue of the breach of the contract, respondent is bound thereby. The mere taking possession of the personal property, even though it might have been wrongful, was not a taking possession of the real estate; and, unless unreasonably prolonged or exercised in some oppressive or arbitrary way—of which there is no evidence—it would not amount to such an interference with respondent's possession as to constitute a breach. The more so, in that Gregory, according to his own testimony, had transferred all rights under the personal property contract to Seeley and with it the right to the use and possession of so much of the farm as might be necessary to maintain and support the dairy herd, in consideration of Seeley's agreement to finance the land contract; so that even though it might be thought that there was some technical interference with the use and possession of the farm, that interference would be with the rights of Seeley and not with Gregory's rights. We must therefore hold as a matter of law, upon the undisputed facts, that no breach has been established.

The judgment appealed from is reversed, and the cause remanded with directions to dismiss the action.

PARKER, MACKINTOSH, MAIN, and MITCHELL, JJ., concur.