[No. 40361-7-II.   Division Two.   August 23, 2011.]

ARTHUR WEST, *Appellant*, v. THE DEPARTMENT OF NATURAL RESOURCES, *Respondent*.

*Arthur West*, pro se.

*Robert M. McKenna, Attorney General*, and *Michael J. Rollinger, Assistant*, for respondent.

¶1 WORSWICK, A.C.J. — Arthur West appeals from a trial court order that the Washington State Department of Natural Resources (DNR) did not violate the Public Records

Act (PRA). Ch. 42.56 RCW. West seeks penalties for untimely disclosure and destruction of documents, an injunction to prevent further destruction of records, and an order authorizing forensic recovery. West argues that the DNR violated the PRA by (1) not responding to his request in five business days, (2) destroying and/or delaying production of the public record e-mails of its chief financial officer, (3) failing to search diligently for the e-mails, and (4) improperly exempting documents from production as either attorney work product or attorney-client privileged. West also argues that all of the trial court's findings lack substantial evidence. Holding that the DNR violated the PRA by not responding to West's request within five business days, we reverse and remand in part.

## FACTS

¶2 In October 2007, West submitted eight specific PRA requests to the DNR, each asking for "all records" regarding eight different topics for the "last 2 years." Clerk's Papers (CP) at 213. West's request 4 read:

> 4. All records of the job functions and work product of Robert Van Schoorl, [chief financial officer,] including hours of work, all communications sent by him, records of phone calls, and all expenditures for travel or other expenses by Van Schoorl via any DNR issued American Express card or other mode of expenditure.

CP at 82. An assistant public records officer acknowledged this PRA request in writing on that same day.

¶3 West's request was not clear enough for Peggy Murphy, a PRA administrator, to provide an estimated time for production of the records. On November 5, 11 business days after West's request, Murphy wrote to West informing him that the DNR was "in the research phase of the eight records requests" and that "some of these are potentially quite extensive and voluminous. If we could work together on these and you could clarify some questions that could

speed the response time line for you." CP at 215. The mailing included Murphy's clarifying questions and six responsive records.

¶4 Three days later, West responded to Murphy's letter and narrowed one of his requests. On November 21, Murphy sent West a letter stating that certain records would be available for his inspection on December 6 and that other records would not be available for another two or three months, depending on the DNR's ability to identify and retrieve them. Murphy asked West to prioritize his request, and she also asked additional clarifying questions, including:

> Concerning item #4, are you looking for the records of Bob Van Schoorl as related to all Port of Olympia communications and interactions or those specifically related to the current dredged materials activities?

CP at 219. On November 26, West responded to Murphy:

> For Nos. 4 and 5, the plain wording of the request for all records related to Mr. Van Shoorl [sic] as a DNR employee with the port and for records related to interrelationships between the port and the DNR should be apparent.
>
> The intent is to obtain all records of Mr. Van Schoorl's actions as a DNR officer that relate to the Port of Olympia and all records of any interrelationships between the Port and the DNR.

CP at 221. In late November, West filed a complaint against the DNR for alleged PRA violations pertaining to his October 19 records request.

¶5 On November 30, Murphy again wrote West, providing him with responsive records, updating him on the results of her research (including that he would need to inquire of other agencies for various records he requested), and informing him that records would be ready for his review in three weeks. On December 18, Murphy informed West by e-mail that the DNR had "an extensive volume of responsive records available" for his review. CP at 226.

Murphy was under the impression that these records constituted the completion of West's request.

¶6 On February 5, 2008, West inspected the records. Murphy informed West that there were no e-mails between Van Schoorl and the Port of Olympia. West then requested all of Van Schoorl's e-mails over a two-year period and additional records concerning Van Schoorl's work product, expenditures, and communications. Murphy viewed these as new or amended PRA requests.

¶7 On February 13, Murphy wrote to West, stating that based on his previous responses to her requests for clarification, she had understood that he wanted records regarding Van Schoorl and the port and that she was now identifying and gathering records for Van Schoorl on any subject. Murphy sent most of West's additionally requested documents, including over 9,200 pages of Van Schoorl's e-mails and attachments, to West in five installments from the end of February to April 11. In her April 11 letter accompanying the CD (compact disc) with scanned documents, Murphy wrote, "This mailing completes the delivery of responsive records that we have related to your records request." CP at 242.

¶8 Murphy did not provide West with all of Van Schoorl's 2006 e-mails because Van Schoorl had relied on backup tapes to capture e-mails he did not keep, and the DNR had upgraded to a new e-mail system in late 2006 and, as a result of the upgrade, the DNR no longer had the capability to locate or access Van Schoorl's old e-mails. Murphy and the DNR information technology personnel had worked for months attempting to access Van Schoorl's 2006 e-mails. The DNR had even hired an outside technical consultant and made "a significant expenditure of time and resources" in their efforts to recover the e-mails. CP at 207.

¶9 In June 2008, the DNR moved to dismiss West's lawsuit for lack of personal jurisdiction because West had failed to serve the DNR. On June 27, West filed a new but substantively similar complaint against the DNR. And in

July, the superior court dismissed the original complaint for lack of personal jurisdiction.

¶10 In August, the DNR concluded that Van Schoorl's 2006 e-mails no longer existed. Murphy asked the DNR employees to provide copies of any e-mails from 2006 they had sent to or received from Van Schoorl. Murphy provided these to West in August and September 2008.

¶11 On September 2, 2008, West submitted another PRA request to the DNR, asking for:

> 1. A complete set of all records requests to DNR from Arthur West.
>
> 2. A complete set of all paper responses to these requests.
>
> . . . .
>
> 3. All records related to recovery of the 2006 Van Schoorl E-mails.

CP at 187. In response, Murphy mailed West a CD of requested records along with an exemption log identifying the records and portions of records exempt from disclosure as either attorney work product or attorney-client privileged.

¶12 In March 2009, West filed a new complaint to challenge the "withholding of records under a claim of attorney client privilege" and the "improper and unlawful destruction of public records required to be maintained regarding the chief financial officer [Van Schoorl's 2006 e-mails]." CP at 42-45. On the same day, West moved for a show cause order to compel the DNR to address his PRA violation allegations.

¶13 At the show cause hearing on April 24, the trial court issued an oral ruling in favor of the DNR on all claims except for certain records withheld under the attorney-client privilege or attorney work product exemption. The trial court then conducted an in-camera review of the withheld records and concluded that the DNR properly withheld records as attorney-client privileged or as attor-

ney work product and found that the DNR did not violate the PRA. In January 2010, the trial court held a hearing to consider West's motion for reconsideration, which the trial court denied. West appeals.

## ANALYSIS

### STANDARD OF REVIEW

¶14  Judicial review of an agency's compliance with the PRA is de novo. *Soter v. Cowles Publ'g Co.*, 162 Wn.2d 716, 731, 174 P.3d 60 (2007). "The [PRA] is a strongly worded mandate for broad disclosure of public records." *Hearst Corp. v. Hoppe*, 90 Wn.2d 123, 127, 580 P.2d 246 (1978). We liberally construe the PRA in favor of disclosure and narrowly construe its exemptions. RCW 42.56.030. The PRA requires every government agency to disclose any public record upon request, unless an enumerated exemption applies. *Sanders v. State*, 169 Wn.2d 827, 836, 240 P.3d 120 (2010); RCW 42.56.070(1).[1] The burden of proof is on the agency to establish that a specific exemption applies. *Daines v. Spokane County*, 111 Wn. App. 342, 346, 44 P.3d 909 (2002). Additionally, an agency has no duty to create or produce a record that is nonexistent. *Building Indus. Ass'n of Wash. v. McCarthy*, 152 Wn. App. 720, 734, 218 P.3d 196 (2009) (*BIAW*). And the PRA " 'does not authorize indiscriminate sifting through an agency's files by citizens searching for records that have been demonstrated not to exist.' " *BIAW*, 152 Wn. App. at 734-35 (emphasis omitted) (quoting *Sperr v. City of Spokane*, 123 Wn. App. 132, 137, 96 P.3d 1012 (2004)).

---

[1] RCW 42.56.070(1) states:

Each agency, in accordance with published rules, shall make available for public inspection and copying all public records, unless the record falls within the specific exemptions of . . . this chapter, or other statute which exempts or prohibits disclosure of specific information or records.

## Timeliness of Response

¶15 West first contends that the trial court erred by finding the DNR's original response was adequate despite the undisputed fact that the DNR failed to do so within five business days. The DNR counters that (1) we should limit our review to those alleged PRA violations existing at the time West filed the complaint from which he appeals, (2) the PRA does not provide for a stand-alone remedy for failure to strictly comply with the five day requirement, and (3) it complied with the PRA because it responded within a reasonable amount of time. We agree with West.

¶16 West argues that because it is undisputed that the DNR failed to respond within the statutorily required 5 business days[2] that at least a minimum penalty is required.[3] The DNR counters that although it took 11 business days to respond to West's original PRA request, it satisfied West's PRA request before the trial court dismissed the original complaint for lack of personal jurisdiction and that at the time that West filed the complaint in the present case, the issue of strict time compliance was a nullity.

---

[2] RCW 42.56.520 provides:

Within five business days of receiving a public record request, an agency . . . must respond by either (1) providing the record; (2) providing an internet address and link on the agency's web site to the specific records requested . . . ; (3) acknowledging that the agency . . . has received the request and providing a reasonable estimate of the time the agency . . . will require to respond to the request; or (4) denying the public record request. Additional time required to respond to a request may be based upon the need to clarify the intent of the request, to locate and assemble the information requested, to notify third persons or agencies affected by the request, or to determine whether any of the information requested is exempt and that a denial should be made as to all or part of the request. In acknowledging receipt of a public record request that is unclear, an agency . . . may ask the requestor to clarify what information the requestor is seeking. If the requestor fails to clarify the request, the agency . . . need not respond to it.

[3] RCW 42.56.520 was amended in 2010. For purposes of this opinion, this amendment does not affect our analysis.

¶17 The DNR complicates what is a very straightforward question: does the failure to acknowledge a request for records within five business days constitute a violation of the PRA? The answer is an unequivocal yes. The PRA could not be clearer on the requirements imposed upon agencies following a request. *See* RCW 42.56.520. Whether that violation entitles the requester to a penalties award is a question that follows. But in this case, the trial court erred in holding that there was no violation under RCW 42-.56.520. Based on this issue, we reverse and remand for the trial court to consider an attorney fee and penalty award under former RCW 42.56.550(4) (2005)[4] in light of the DNR's violation.[5] Now we turn to the remaining issues.

IRRETRIEVABLE E-MAIL

¶18 West next contends that the DNR's "destruction" of Van Schoorl's e-mails violated statutory obligations to retain the e-mails. Br. of Appellant at 17. Finding insufficient evidence of destruction, we disagree.

¶19 West first argues that the DNR unlawfully destroyed Van Schoorl's 2006 e-mails. Despite this argument, there is simply no evidence in the record of any unlawful destruction of e-mails. Instead, the record shows that the DNR inadvertently lost Van Schoorl's e-mails almost one year before West made his request. Thus, the e-mails did not exist at the time of West's request.

¶20 West goes on to argue that the DNR's accidental destruction of records does not relieve it of obligations to produce the requested documents. West relies on *Yacobellis v. City of Bellingham*, 55 Wn. App. 706, 780 P.2d 272 (1989),

---

[4] The only difference between RCW 42.56.550(4) in its current form and the former statute we cite to here relates to the amount of penalties that the trial court may award. There are no substantive changes that affect our analysis.

[5] While it is highly unlikely that a significant award would result in light of the facts in this case, the strict requirements of the PRA preclude us from applying a reasonableness test in order to determine whether a violation occurred and whether penalties should be awarded, as the dissent suggests.

to support his proposition. In *Yacobellis*, the requester repeatedly requested public records over nearly a one year period. 55 Wn. App. at 708. The city "refused to provide copies of the completed questionnaires on the ground that all complete data was in the survey" that the city had already provided. *Yacobellis*, 55 Wn. App. at 708. Eventually, the city informed Yacobellis that the records actually "had been discarded." *Yacobellis*, 55 Wn. App. at 708. The *Yacobellis* court noted that when Yacobellis first asked for the documents, the city's initial reason for refusing his request was not that the documents no longer existed. 55 Wn. App. at 708. Thus, *Yacobellis* does not appear to be a case where destruction of documents occurred before a request was made. The 2006 e-mails West requested here did not exist when he made his request.

¶21 In his reply brief, West relies on the records retention act, chapter 40.14 RCW, for the proposition that unless courts apply this statute, agencies will circumvent the PRA and improperly destroy records. But we have rejected this argument before. *See BIAW*, 152 Wn. App. at 741 (despite this argument's compelling logic, no improper destruction has been shown). Here, there was " 'no agency action to review under the Act' where the agency did not deny the requestor an opportunity to inspect or copy a public record because the public record he sought 'did not exist.' " *BIAW*, 152 Wn. App. at 740 (quoting *Sperr*, 123 Wn. App. at 137).

¶22 West also argues that the trial court erred in finding "the delays in the partial recovery and disclosure of the destroyed records" to be reasonable. Br. of Appellant at 20. We review the trial court's findings of fact for substantial evidence in the record. *Mitchell v. Wash. State Inst. of Pub. Policy*, 153 Wn. App. 803, 814, 225 P.3d 280 (2009). " 'Substantial evidence is evidence that would persuade a fair-minded person of the truth of the statement asserted.' " *Mitchell*, 153 Wn. App. at 814 (quoting *Cingular Wireless, LLC v. Thurston County*, 131 Wn. App. 756, 768, 129 P.3d 300 (2006)).

¶23 Again, West does not supply any legal authority for his argument of unreasonable delay connected to the DNR's efforts to retrieve Van Schoorl's e-mails. Additionally, he identifies the records only as "the destroyed records" and fails to specify any aspect of the time delay or explain why the delay was unreasonable. Here, the facts show that the DNR technology personnel worked for months trying to access Van Schoorl's 2006 e-mails. The DNR hired an outside technical consultant and made "a significant expenditure of time and resources" in its efforts to recover the e-mails. CP at 207. No facts indicate that the DNR "delayed" the provision of records. Rather, the evidence shows the DNR diligently pursued retrieval of the records. Substantial evidence supports the trial court's finding that the response time was reasonable. *See Yousoufian v. Office of Ron Sims, King County Exec.*, 168 Wn.2d 444, 467, 229 P.3d 735 (2010). Thus, West's argument fails.

ATTORNEY WORK PRODUCT AND/OR ATTORNEY-CLIENT PRIVILEGE

¶24 West next argues that the trial court erred in finding certain documents properly exempt as attorney work product and under the attorney-client privilege. The DNR responds that the records are properly exempt because they are undiscoverable records created in preparation for litigation. Additionally, the DNR argues that West's argument is without any factual or legal basis. We agree with the DNR.

¶25 The PRA exempts production of

[r]ecords that are relevant to a controversy to which an agency is a party but which records would not be available to another party under the rules of pretrial discovery for causes pending in the superior courts.

RCW 42.56.290. Documents that are discoverable under CR 26 are subject to disclosure under the PRA, and documents that are protected under CR 26 or its incorporation of the attorney-client privilege are exempt from production under the PRA. *Soter*, 162 Wn.2d at 733-34.

¶26 CR 26(b)(1) provides that "[p]arties may obtain discovery regarding any matter, not privileged . . . ," and CR 26(b)(4) provides that "the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." And RCW 5.60.060(2)(a) provides:

> An attorney or counselor shall not, without the consent of his or her client, be examined as to any communication made by the client to him or her, or his or her advice given thereon in the course of professional employment.

*See also Hangartner v. City of Seattle*, 151 Wn.2d 439, 452, 90 P.3d 26 (2004). This privilege applies to any information generated by a request for legal advice, including documents created by clients with the intention of communicating with their attorney. *Soter*, 162 Wn.2d at 747.

¶27 After West filed his PRA lawsuit, Murphy mailed West a CD of requested records along with an exemption log identifying the records and portions of records exempt from disclosure either as attorney work product or under the attorney-client privilege. The trial court conducted an in-camera review of the withheld records and found that the DNR created the withheld records after West's PRA request and the records were "responsive to his request."[6] CP at 110. As the DNR correctly states, because none of the records withheld would exist but for West's litigation, they are properly exempt under the attorney-client privilege or the attorney work product exemption. Thus, West's argument on this point fails.

TRIAL COURT'S FINDINGS OF FACT

¶28 West finally contends that substantial evidence does not support each and every one of the trial court's findings, including all findings from the show cause order, sealing

---

[6] We also found this to be the case following our own sealed records review.

order, and order on in-camera review. But as the DNR states, this catchall argument fails to comply with the briefing requirements of RAP 10.3.[7] Thus, we decline to reach West's sweeping argument that the trial court erred in all of its findings.

¶29 Affirmed in part; reversed and remanded in part.

ARMSTRONG, J., concurs.

¶30 HUNT, J. (concurring in part and dissenting in part) — I concur in most of the majority's opinion, but I respectfully dissent from its holding that West is entitled to some level of costs, attorney fees, and penalties under former RCW 42.56.550(4) (2005), *amended by* LAWS OF 2011, ch. 273, § 1,[8] for the State's failure to respond to his October 19, 2007 public records request within 5 business days as required by former RCW 42.56.520 (1995), *amended by* LAWS OF 2010, ch. 69, § 2. Although I agree with the majority that Washington State Department of Natural Resources

---

[7] RAP 10.3 provides that an appellant's brief should contain:

[(a)](4) *Assignments of Error.* A separate concise statement of each error a party contends was made by the trial court, together with the issues pertaining to the assignments of error.

. . . .

(6) *Argument.* The argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record. The argument may be preceded by a summary. The court ordinarily encourages a concise statement of the standard of review as to each issue.

. . . .

**(g) Special Provision for Assignments of Error.** A separate assignment of error for each instruction which a party contends was improperly given or refused must be included with reference to each instruction or proposed instruction by number. A separate assignment of error for each finding of fact a party contends was improperly made must be included with reference to the finding by number. The appellate court will only review a claimed error which is included in an assignment of error or clearly disclosed in the associated issue pertaining thereto.

[8] On May 5, 2011, our state legislature reenacted and amended the former version of this statute by permitting courts to impose a daily penalty of less than five dollars a day, effective July 22, 2011.

(DNR) violated the Public Records Act (PRA)[9] when it waited 11 days to respond to West's October 2007 request, I do not agree that former RCW 42.56.550(4) impliedly provides a monetary remedy for this type of violation, especially where, as here, DNR otherwise timely produced thousands of pages of documents spanning a 2-year period after West clarified his initial broad-based request.

¶31 The first sentence of former RCW 42.56.550(4) provides:

> Any person who *prevails against an agency in any action in the courts seeking* the right to inspect or copy any public record or *the right to receive a response to a public record request within a reasonable amount of time* shall be awarded all costs, including reasonable attorney fees, incurred in connection with such legal action.

(Emphasis added.)

### I. West Did Not Prevail in an Action Seeking Access to Public Records

¶32  As DNR points out in its brief, West did not obtain the right to inspect and to receive the documents he requested on October 19, 2007, by " 'prevail[ing] . . . in any action in the courts,' " the first clause of the first sentence of former RCW 42.56.550(4). Br. of Resp't at 12 (quoting former RCW 42.56.550(4)). On the contrary, DNR provided West with the first 80 pages of requested documents and an estimate of the time it would take to compile the other documents within 11 days of his request, weeks before he filed his first PRA action against DNR. Moreover, the superior court ultimately dismissed West's action for lack of jurisdiction because he had failed to serve DNR. West has not "prevail[ed] against an agency in any action in the courts seeking the right to inspect or copy any public record." Former RCW 42.56-.550(4). Thus, he does not fall within the first category of

---

[9] Ch. 42.56 RCW.

persons entitled to a monetary remedy under former RCW 42.56.550(4) for a PRA violation.

## II. West Did Not Prevail in Action Seeking Reasonable-Time Response to Record Request

¶33 Although former RCW 42.56.520 clearly requires an agency to respond to a PRA request within five business days, the second clause of the first sentence of former RCW 42.56.550(4) neither cross-references RCW 42.56.520 nor reiterates five days as a strict outer time limit for purposes of subjecting an agency to monetary sanctions if the agency fails to respond to a PRA request within five days. Rather, this second clause of the first sentence of former RCW 42.56.550(4) uses the flexible term "within a reasonable amount of time." In seeking a monetary award under former RCW 42.56.550(4), West argued below, as he argues on appeal, that he is entitled to a monetary award based on DNR's acknowledged failure to provide any response, other than acknowledging receipt of his PRA request, within the first five business days.

¶34 DNR acknowledges that it did not respond to West's October 2007 public records request for 11 days after receiving it. The superior court found (1) that DNR "lack[ed] procedural compliance with [former] RCW 42.56.520" by failing to respond to West's request within the statutorily prescribed 5 days;[10] but (2) that DNR's response was "reasonable"

> [g]iven the scope of Mr. West's public records requests, which resulted in production of over 13,000 pages, and the events that occurred after [DNR's] November 5, 2007[ ] request for clarification when the parties exchanged information clarifying and defining the scope of the request.

Clerk's Papers (CP) at 306-07 (Finding of Fact (FF) 11). In light of West's voluminous production request and DNR's

---

[10] Clerk's Papers at 307 (Finding of Fact 12).

timely fulfilling it, the superior court further found that DNR's "lack of procedural compliance with [former] RCW 42.56.520" did not affect DNR's performance of its responsibilities under the PRA. CP at 307 (FF 12).

¶35 In other words, the trial court found that (1) DNR's Herculean efforts in producing thousands of pages of documents in response to West's broad and complex request substantially complied with its responsibilities under the PRA, despite DNR's initial six-day tardiness in responding to the request and producing the first installment of documents; and (2) the PRA did not require imposition of an award to West under these circumstances.

¶36 West fails to support with persuasive facts or law his assertion that DNR's "delays" resulted in obstruction of public disclosure. Br. of Appellant at 19. Furthermore, contrary to his assertion that he should receive at least a minimum award for DNR's five-day response time violation, the cases he cites support imposition of penalties under former RCW 42.56.550(4) only in situations in which the agency improperly withheld requested documents altogether. He cites no case imposing or upholding a penalty in a case like this one, where DNR produced 3,200 pages of requested documents within six weeks of West's original request, well before he filed his first action against DNR.

¶37 The plain language of former RCW 42.56.550(4)'s first sentence, second clause, requires an award of costs and attorney fees only to a person "who prevails against an agency in any action in the courts seeking . . . the right to receive a response to a public record request within a reasonable amount of time." Even though DNR produced the remaining thousands of documents within a month after West filed his lawsuit, he fails to show that it was his legal action that prompted DNR's response; on the contrary, the superior court clearly found that DNR made prodigiously reasonable efforts to comply with West's monumental requests within a reasonable time. *See, e.g.*, CP at 305-07 (FF 7, 11, 12). More importantly, because the supe-

rior court dismissed West's action, which dismissal West did not appeal, he fails to show that he "prevailed" in an action against DNR involving the seeking of a response to his PRA request. In short, West is not entitled to an award of costs and attorney fees under either clause of the first sentence of former RCW 42.56.550(4).

### III. No Denial of Right To Inspect Public Records

¶38 The second sentence of former RCW 42.56.550(4) provides:

> In addition, it shall be *within the discretion of the court to award* such person an amount not less than five dollars and not to exceed one hundred dollars for each day that he or she was *denied the right to inspect or copy said public record.*

(Emphasis added.) As with the first sentence of this statute, West fails to show that he is entitled to seek the superior court's exercise of its discretion to assess a penalty against DNR under the second sentence because he fails to show that DNR denied him the right to inspect or to copy any public records that he requested and to which he was entitled.[11]

¶39 The majority holds that West is nevertheless entitled to a remand to the superior court with instructions to exercise its discretion under the second sentence of former RCW 42.56.550(4) because DNR's delay in responding to West's initial records request denied him access for 6 days—from the time of the required response within 5 days until DNR's response within 11 days. I reiterate that I find no such authorizing language in the statute. Nor do any Washington PRA cases decided thus far allow or mandate imposition of a monetary penalty or assessment of attorney

---

[11] West maintains on appeal that DNR wrongfully denied him the right to inspect 80 pages of e-mails that the superior court reviewed in camera and ruled exempt as attorney work product. But we affirm the superior court on this point; thus, even on appeal he fails to show any denial of access to public records to which he was entitled under the law.

fees and costs against an agency for failing to respond within 5 days of a request when the agency fulfills that request within a reasonable time, taking into consideration the breadth of the request and the complexity of the response it generated. I would affirm the superior court's denial of costs, attorney fees, and penalties to West under former RCW 42.56.550(4).

¶40 I concur in part and dissent in part.

Reconsideration denied October 24, 2011.