FILED
COURT OF APPEALS
DIVISION II

2013 OCT 29 AM 9: 46

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| DEREK E. GRONQUIST, | No. 42774-5-II |
| Appellant, | (consolidated with) |
| v. | |
| STATE OF WASHINGTON, DEPARTMENT OF CORRECTIONS, | |
| Respondents. | |
| DEREK E. GRONQUIST, | No. 43500-4-II |
| Appellant, | |
| v. | PART PUBLISHED OPINION |
| STATE OF WASHINGTON, DEPARTMENT OF CORRECTIONS, | |
| Respondents | |

HUNT, J. — Derek E. Gronquist appeals several superior court orders and findings entered in his Public Records Act (PRA)[1] lawsuit. He argues that the superior court erred in (1) limiting the penalty period of the Department of Corrections (DOC)'s PRA violation and awarding a penalty amount that was too small; and (2) concluding that the surveillance video

---

[1] Chapter 42.56 RCW.

recordings he requested on August 5, 2007, were exempt from disclosure under the PRA. We hold that RCW 42.56.565(1) bars an award of PRA penalties to Gronquist because (1) he was serving a criminal sentence in a correctional facility when he made his PRA request to DOC; (2) the superior court found no bad faith in DOC's inadvertent omission of one page from the documents it produced in response to his PRA request; and (3) no final judgment had yet been entered in his PRA action at the time the legislature enacted this prohibition in 2011. We further hold that the prison surveillance video recordings that Gronquist requested were exempt from disclosure under RCW 42.56.240(1). Accordingly, we affirm.[2]

## FACTS

### I. PRA REQUESTS TO DOC

#### A. July 30, 2007 Request

On July 24, 2007, DOC inmate Derek E. Gronquist sent a PRA request to DOC seeking:

1. All [DOC] inmate identification badges/cards from undocumented alien workers employed by DOC's Class II Industries[3] [. . . .];
2. All records demonstrating the payment of any wages, gratuities, or other forms of payment to undocumented alien workers employed by the DOC[ . . . .];
3. All records revealing internal DOC communications and/or deliberations concerning the use of undocumented alien workers in DOC's Industries program.

Clerk's Papers (CP) at 252-53. Gronquist clarified that "'undocumented alien worker'" meant "any person who is not a [U]nited [S]tates citizen and who does not possess a current and valid work permit or similar document authorizing such person to be employed in the [U]nited

---

[2] Because DOC did not cross-appeal the superior court's award of a PRA penalty to Gronquist, the propriety of this award is not before us in the instant appeal.

[3] Neither Gronquist's request nor the record explains what "DOC's Class II Industries program" encompasses.

2

[S]tates." CP at 253. DOC received this request on July 30. The next day, DOC responded that it had no records to disclose in response to Gronquist's request because DOC's Class II Industries program did not identify offenders by citizenship and citizenship was not a part of its employment process.

### B. August 9, 2007 Request

On August 9, DOC received from Gronquist a second, unrelated PRA request to DOC dated August 5, stating:

> I am requesting the following records concerning an assault and/or extortion attempt that happened to me at the Clallam Bay Correction[s] Center on June 17, 2007:
> 1. All documents created in response to, or because of, this incident;
> [. . .]
> 4. The surv[e]illance video of C-unit from 6:00 a.m. to 2:00 p.m. of June 17, 2007;
> 5. The surv[e]illance video of the chow hall used for C-unit inmates on and for the [b]reakfast meal on June 17, 2007;
> [. . .]
> 9. The complete [i]nternal [i]nvestigations file.

CP at 215-16. In response to this request, on October 26, DOC staff (1) mailed Gronquist 96 pages of documents, from which 1 page was inadvertently missing; and (2) claimed that the surveillance video recordings were exempt from PRA disclosure under former RCW 42.56.420(2) (2005), providing a brief explanation for this claimed exemption. On November 2, the Stafford Creek Corrections Center intercepted this mail and withheld 39 pages of documents and 11 photographs in accordance with DOC's mail rejection policy.[4]

---

[4] The record on appeal neither includes nor explains DOC's mail rejection policy.

Eventually DOC released these intercepted documents to Gronquist during the discovery process in an unrelated case. Gronquist did not alert DOC about the single missing page from the 96 pages it had provided. When DOC later learned about the missing page through Gronquist's lawsuit, it located and supplied it to him.

## II. JUDICIAL REVIEW

On June 12, 2009, Gronquist filed a motion for judicial review under the PRA, asking the superior court to require DOC to "show cause" why "disclosure of requested public records should not be compelled and sanctions imposed" for DOC's alleged PRA violations. CP at 429. On July 27, Gronquist filed a complaint in superior court, claiming DOC had violated the PRA in (1) failing to conduct an adequate search for records involving "undocumented alien workers"; (2) withholding surveillance video recordings; and (3) improperly withholding one page from the internal investigation report. CP at 321. Gronquist also alleged that Stafford Creek's screening and withholding of 39 pages and 11 photographs of his PRA documents violated the free speech clause of the Washington Constitution, article I, section 5.

### A. December 18, 2009 PRA Order, Findings, and Penalty

On December 18, 2009, the superior court ruled that (1) DOC had violated the PRA by inadvertently withholding one page of the documents it had provided in response to Gronquist's August 9, 2007 PRA request; (2) DOC's omission had not been in bad faith; (3) Gronquist had failed to request identifiable records when he requested information about undocumented alien workers (because "records in the form requested did not exist"); and (4) DOC properly withheld

4

surveillance video tapes from disclosure under RCW 42.56.240(1).[5]   I CP at 125.   For

inadvertently having withheld 1 page, the superior court ordered DOC to pay a PRA penalty of

$15 per day for 24 days, for a total of $260 to Gronquist.

Arguing fraud, Gronquist later moved to vacate the superior court's December 18 order.

The superior court denied this motion.

### B. Motion To Dismiss; January 3, 2011 Order

On October 8, 2010, DOC moved to dismiss Gronquist's PRA action under CR 12(b)(6).

DOC argued that (1) the superior court had resolved all of Gronquist's PRA claims in its

December 18, 2009 show cause order; and (2) the superior court should dismiss Gronquist's

remaining art. 1, § 5 claim as a matter of law because (a) violations of the Washington

Constitution are not independently actionable torts, and (b) Gronquist had no protected interest in

receiving uncensored mail in prison.   On January 3, 2011, the superior court granted the motion

in part and dismissed all of Gronquist's PRA claims except his claim for injunctive relief from

DOC's withholding a portion of his incoming mail "without legitimate peneological [sic]

reasons." I CP at 98-99.

### C. Motion To Amend; February 27, 2012 Order

On January 31, 2012, Gronquist moved for leave to file a second amended complaint,

restating his previously resolved and dismissed PRA claims, but adding an allegation that DOC

had violated the PRA by failing to conduct an adequate search for records.   On February 27, the

---

[5] The legislature amended RCW 42.56.240 in 2010, 2012, and 2013. LAWS OF 2013, ch. 315 § 2; ch. 190 § 7; ch. 183 § 1; LAWS OF 2012, ch. 88 § 1; LAWS OF 2010, ch. 266 § 2; ch. 182 § 5. The amendments did not alter the statute in any way relevant to this case; accordingly, we cite the current version of the statute.

superior court (1) denied Gronquist's motion as untimely; and (2) dismissed Gronquist's sole remaining art. I, § 5 claim with prejudice because he had stated in his memorandum that his art. I, § 5 claim was "moot."[6] Suppl. CP at 477.

Gronquist appeals the superior court's (1) December 18, 2009 findings and penalty order[7]; (2) January 3, 2011 order granting in part and denying in part DOC's motion to dismiss; and (3) February 27, 2012 order denying Gronquist's motion for leave to amend his complaint and dismissing his remaining claims.

ANALYSIS

I. RCW 42.56.565(1): ABSENCE OF BAD FAITH BARS PRA PENALTY FOR PRISONER

Gronquist challenges the amount of the superior court's December 18, 2009 penalties. He argues that the superior court lacked authority to reduce the penalty period for DOC's inadvertent late disclosure of 1 page of the 96 pages of documents it had provided in response to his PRA request. We hold that RCW 42.56.565(1) defeats this argument because (1) DOC did provide him the missing page when it became aware of its inadvertent earlier omission from the 96 pages it had timely provided in response to his second PRA request; (2) the superior court expressly found that DOC had not acted in bad faith in having inadvertently omitted this page;

---

[6] *See* Gronquist's memorandum in support of this motion. *See also* Gronquist's related motion, in which he stated that because he had since received the records that were the basis of his art. I, § 5 claim, injunctive relief was no longer necessary.

[7] DOC does not cross-appeal the trial court's imposition of PRA penalties, including the amount. It challenges only Gronquist's assertion that the trial court erred in calculating penalties that were too low, or, in the alternative, that Gronquist's claim is moot in light of RCW 42.56.565(1).

and (3) RCW 42.56.565(1) prohibits an award of *any* PRA penalties to a prison inmate serving a criminal sentence absent a showing of bad faith.[8]

The question of whether the PRA authorizes a trial court to reduce the penalty period is a question of law, which we review de novo. *Yousoufian v. Office of Ron Sims*, 152 Wn.2d 421, 436, 98 P.3d 463 (2004).[9] We look to a statute's plain language to give effect to legislative intent. *Lacey Nursing Ctr., Inc. v. Dep't of Revenue*, 128 Wn.2d 40, 53, 905 P.2d 338 (1995). When faced with an unambiguous statute, we derive the legislature's intent from the plain language alone. *Waste Mgmt. of Seattle, Inc. v. Util. & Transp. Comm'n*, 123 Wn.2d 621, 629, 869 P.2d 1034 (1994).

RCW 42.56.565(1) provides:

> A court shall not award penalties under RCW 42.56.550(4) to a person who was serving a criminal sentence in a state, local, or privately operated correctional facility on the date the request for public records was made, unless the court finds that the agency *acted in bad faith* in denying the person the opportunity to inspect or copy a public record.

---

[8] Although neither party argues that RCW 42.56.565(1) generally prohibits prisoners' receipt of *any* PRA penalties (*see* discussion later in this Analysis), we may affirm the superior court on any ground the record supports. *State v. Costich*, 152 Wn.2d 463, 477, 98 P.3d 795 (2004).

[9] The legislature's 2005 recodification of the Public Disclosure Act, chapter 42.17 RCW, as the Public Records Act, chapter 42.56 RCW, LAWS OF 2005, ch. 274, § 1, did not alter the pertinent language on which our Supreme Court relied in *Yousoufian*. *See* former RCW 42.17; RCW 42.56. Accordingly, we refer to the PDA by its current title, the PRA.

(Emphasis added).[10] The legislature further specified that the above subsection (1) "applies to all actions brought under RCW 42.56.550 in which *final judgment has not been entered* as of the effective date of this section [July 22, 2011]." LAWS OF 2011, ch. 300, § 2 (emphasis added).

Generally, a "final judgment" is a judgment that ends all litigation, including appellate review, leaving nothing for the court to do but to execute the judgment. *Anderson & Middleton Lumber Co. v. Quinault Indian Nation*, 79 Wn. App. 221, 225, 901 P.2d 1060 (1995) (citing *Catlin v. United States*, 324 U.S. 229, 233, 65 S. Ct. 631, 89 L. Ed. 911 (1945)), *aff'd*, 130 Wn.2d 862, 929 P.2d 379 (1996). But the legislature did not specify whether its statutory reference to a "final judgment" in the comment to RCW 42.56.565(1) encompasses this broad concept of complete and final adjudication of an issue, including exhaustion of appellate review. *See In re Skylstad*, 160 Wn.2d 944, 948-49, 162 P.3d 413 (2007) (judgment becomes final "when all litigation on the merits ends," interpreting RCW 10.30.090 in criminal context).

This broad interpretation of "final judgment" is consistent with several recent Washington cases addressing RCW 42.56.565. *See Franklin County Sheriff's Office v. Parmelee*, 175 Wn.2d 476, 481 n.5, 285 P.3d 67 (2012) (contemplating the superior court's application of RCW 42.56.565 on remand, notwithstanding its being enacted *after* the plaintiff sought interlocutory review), *cert. denied*, 133 S. Ct. 2037 (2013); *DeLong v. Parmelee*, 164 Wn. App. 781, 786-87, 267 P.3d 410 (2011) (applying RCW 42.56.565(1) on appeal to bar an inmate's recovery of PRA penalties, notwithstanding its being enacted *after* the original trial),

---

[10] *See Burt v. Washington State Department of Corrections*, 168 Wn.2d 828, 837 n.9, 231 P.3d 191 (2010) (noting that legislature's enacting of RCW 42.56.565 would "greatly curtail abusive prisoner requests for public records").

*review denied*, 173 Wn.2d 1027 (2012). We apply this generally accepted broad definition of "final judgment" here.

In 2011, while Gronquist's PRA claims were awaiting appellate review, our legislature promulgated RCW 42.56.565(1), accompanied by a "final judgment" limitation in the related comment; thus, no "final judgment" has yet been entered in his action. Gronquist is serving a criminal sentence. And the superior court found no bad faith in DOC's inadvertently omitting one page from the documents it provided in response to Gronquist's second PRA request. Thus, RCW 42.56.565(1) applies to bar his claim for PRA penalties. Holding that because Gronquist is not statutorily entitled to *any* amount of PRA penalties, we do not further consider his argument that the penalty amounts the superior court awarded him were too small. DOC did not cross appeal this award, thus, we must leave the superior court's PRA penalty intact.

II. SURVEILLANCE VIDEO RECORDINGS; STATUTORY EXEMPTION

Gronquist next argues that the superior court erred in concluding that the surveillance video recordings he requested on August 9, 2007, were exempt from disclosure. Again, we disagree.

We liberally construe the PRA in favor of disclosure and narrowly construe its exemptions. RCW 42.56.030. The PRA requires agencies to disclose any public record upon request unless an enumerated exemption applies. *Sanders v. State*, 169 Wn.2d 827, 836, 240 P.3d 120 (2010); RCW 42.56.070(1). The burden of proof is on the agency to establish that a specific exemption applies. *Neighborhood Alliance of Spokane County v. County of Spokane*, 172 Wn.2d 702, 715, 261 P.3d 119 (2011).

Gronquist's August 9, 2007 PRA request sought "surveillance video of C-unit from 6:00 a.m. to 2:00 p.m. of June 17, 2007" and "surveillance video of the chow hall used for C-unit inmates on and for the [b]reakfast meal on June 17, 2007." CP at 215-16. In its response to Gronquist's show cause motion, DOC argued that the surveillance video recordings were exempt under RCW 42.56.240, which provides:

> The following investigative, law enforcement, and crime victim information is exempt from public inspection and copying under this chapter:
>
> (1) Specific intelligence information and specific investigative records compiled by investigative, law enforcement, and penology agencies, and state agencies vested with the responsibility to discipline members of any profession, the nondisclosure of which is essential to effective law enforcement or for the protection of any person's right to privacy.

CP at 191.

To demonstrate how nondisclosure of these surveillance videos is "essential to effective law enforcement,"[11] the DOC supplied the declaration of Richard Morgan, DOC's Director of Prisons. Morgan explained that DOC's surveillance system is (1) "[o]ne of the most important tools for maintaining the security and orderly operation of prisons,"[12] and (2) "an essential element of effective control of a population that is 100 [percent] criminal in its composition and is accustomed to evading detection and exploiting the absence of authority, monitoring, and accountability"[13] as follows:

---

[11] RCW 42.56.240(1).

[12] CP at 290.

[13] CP at 290.

> Since the resources are not available to accomplish 100 [percent] surveillance at all times, it is mission critical that offenders and their cohorts not know the capabilities and the limitations of DOC's surveillance capabilities.
>
> [. . .]
>
> It is a significant advantage to have offenders uncertain as to what is being monitored, what is recorded, and what is in the field of view. Offenders will often use "blind spots" (locations that have infrequent staff presence and no electronic surveillance) to commit acts of violence and purveying contraband. In reconstructing incidents and interviewing offenders, it has been found that incident location is often chosen due to a perceived lack of surveillance. In my expert opinion, surveillance, real or imagined, is a powerful deterrent to assaults and other problematic behaviors by offenders.

CP at 290-91. Morgan concluded, "Providing offenders access to recordings of DOC surveillance videos would allow them to accurately determine which areas are weak or devoid in DOC's ability to capture identities in the aftermath of an incident or crime." CP at 291. The record contains no controverting evidence.[14]

Under RCW 42.56.240(1), an investigative, law enforcement, or penology agency must have compiled the "[s]pecific intelligence information and specific investigative records" that the requester seeks. Secondly, the agency must show that the "nondisclosure" of the information is "essential to effective law enforcement." RCW 42.56.240(1). Gronquist does not contend that DOC is not a law enforcement agency. And, as Morgan explained, providing inmates with

---

[14] Gronquist cites *Prison Legal News, Inc. v. Department of Corrections*, 154 Wn.2d 628, 643, 115 P.3d 316 (2005), to argue that DOC's claiming exemption of disclosure of prison video surveillance recordings is contrary to our general instruction to construe PRA exemptions narrowly. *Prison Legal News*, however, does not control here. In *Prison Legal News*, DOC attempted to withhold identifying information in public records related to medical misconduct investigations in Washington prisons. 154 Wn.2d at 632. Examining the "specific investigative records" exemption of former RCW 42.17.310(1)(d) (2003), now codified as RCW 42.56.240(1), our Supreme Court held that DOC failed to meet its burden in proving that the redactions were "'essential to effective law enforcement.'" *Prison Legal News* at 639. Here, as we note above, DOC has sustained its burden in showing that nondisclosure is "essential to effective law enforcement."

access to recordings of DOC's surveillance videos would allow prisoners to exploit weaknesses in DOC's surveillance system. As Division One of our court has held, "Intelligence information provided by video surveillance systems . . . falls squarely within the core definitions of 'law enforcement,'" thereby exempting surveillance video recordings from disclosure under RCW 42.56.240(1). *Fischer v. Wash. State Dep't of Corr.*, 160 Wn. App. 722, 727-28, 254 P.3d 824 (2011), *review denied*, 172 Wn.2d 1001 (2011). We hold, therefore, that the superior court did not err in concluding that the surveillance video recordings Gronquist sought were exempt from the PRA's otherwise broad disclosure requirements.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Gronquist further argues that the superior court erred in (1) denying his motion to vacate the December 18, 2009 show cause order; (2) concluding that his July 30, 2007 PRA request did not seek identifiable public records; (3) denying his motion to amend his complaint as untimely; and (4) dismissing his free speech claim. Gronquist also argues that DOC failed to conduct an objectively reasonable search for records in response to his July 30, 2007 PRA request and that RCW 72.09.530 is unconstitutionally overbroad. Holding that the superior court did not err and refusing to consider unpreserved arguments Gronquist raises for the first time on appeal, we affirm.

### III. MOTION TO VACATE

Gronquist contends that the superior court abused its discretion in denying his motion to vacate the December 18, 2009 show cause order, which decision, he argues, "was based upon the

untenable conclusion that the previous '[o]rder was correct, in that video recordings are categorically exempt from disclosure." Second Amend. Br. of Appellant at 51 (alteration in original) (quoting CP at 11). We have just held that the trial court did not err in concluding that the surveillance video recordings were exempt under RCW 42.56.240(1). Because Gronquist fails to articulate any other reason why the superior court's decision was in error, we do not further address this claim.

## IV. REQUEST FOR NONEXISTENT "UNDOCUMENTED ALIEN LABOR" RECORDS

### A. Unidentifiable Records Request

Gronquist next argues that the superior court erred in its December 18, 2009[15] order when it concluded that his July 30, 2007 PRA request for "[a]ll [DOC] inmate identification badges/cards from undocumented alien workers employed by DOC's Class II Industries"[16] did not seek "identifiable" public records. Second Am. Br. of Appellant at 22, 28. We disagree.

The PRA requires agencies to respond to requests for only "identifiable public records." RCW 42.56.080; *see also Hangartner v. City of Seattle*, 151 Wn.2d 439, 447-48, 90 P.3d 26 (2004). A party seeking public records under the PRA must, "at a minimum, provide notice that the request is made pursuant to the [PRA] and identify the documents with reasonable clarity to allow the agency to locate them." *Hangartner*, 151 Wn.2d at 447 (citing *Wood v. Lowe*, 102 Wn. App. 872, 878, 10 P.3d 494 (2000)). "The [PRA] does not require agencies to research or

---

[15] The Second Amended Br. of Appellant at 28 refers to the superior court's "December 18, 2007" order. We believe this to be a scrivener's error and reference should be to the court's December 18, 2009 order.

[16] CP at 252.

explain public records, but only to make those records accessible to the public." *Smith v. Okanogan County*, 100 Wn. App. 7, 12, 994 P.2d 857 (2000) (citing *Bonamy v. City of Seattle*, 92 Wn. App. 403, 409, 960 P.2d 447 (1998), *review denied*, 137 Wn.2d 1012 (1999)). Moreover, an agency has no duty to create or produce records that are nonexistent. *West v. Wash. State Dep't of Natural Res.*, 163 Wn. App. 235, 242, 258 P.3d 78 (2011), *review denied*, 173 Wn.2d 1020 (2012).

Gronquist argues that because DOC Policy 330.700 states that DOC "will identify offenders who are citizens of other nations," the superior court erred in finding that Gronquist's request for "undocumented alien workers" in DOC's Class II Industries program did not seek identifiable public records.[17] Second Am. Br. of Appellant at 24, 26-27 (quoting CP at 425). There is no support for this claim in law or in the record. Michael Holthe, Clallam Bay Corrections Center's Public Disclosure Coordinator, declared that after receiving Gronquist's July 30, 2007 request, he had inquired with the Class II Industries program manager, who explained that Class II Industries did not identify offenders by citizenship and that such

---

[17] Contrary to Gronquist's assertion, DOC's identification of offenders by citizenship does not suggest that DOC's Class II Industries program similarly identifies its workers by their citizenship. Moreover, there is nothing further in the record to suggest that the superior court erred in concluding that "records *in the form requested* did not exist." CP at 125 (emphasis added).

classification was not part of its employment process.[18] Thus, the record supports the superior court's ruling that there were no identifiable records matching Gronquist's request. We hold, therefore, that the superior court did not err in ruling that Gronquist's request had been for non-existent, or unidentifiable, records.

### B. Objectively Reasonable Search for Records

In a related argument, Gronquist contends for the first time on appeal that DOC failed to conduct an objectively reasonable search for "undocumented alien labor" records. Second Am. Br. of Appellant at 29. Because Gronquist failed to raise this issue below, we do not address it on appeal.

"An argument neither pleaded nor argued to the trial court cannot be raised for the first time on appeal." *Sourakli v. Kyriakos, Inc.*, 144 Wn. App. 501, 509, 182 P.3d 985 (2008) (citing *Sneed v. Barna*, 80 Wn. App. 843, 847, 912 P.2d 1035 (1996)). Furthermore, we "may refuse to review any claim of error which was not raised in the trial court." RAP 2.5(a). Because Gronquist failed to raise this alleged error below, we decline to review it for the first time on appeal.

---

[18] Gronquist argues extensively that, because DOC has access to a variety of information about its inmates, including citizenship, it *could have compared* each of its Class II Industries workers against its other records to provide Gronquist his requested information. As we have already explained, the PRA does not require any agency to create documents in response to PRA requests. *See Smith*, 100 Wn. App. at 12 ("An important distinction must be drawn between a request for information about public records and a request for the records themselves."); *West*, 163 Wn. App. at 242 (Agency has no duty to create or produce a record that is nonexistent).

## V. MOTION TO AMEND COMPLAINT

Gronquist next argues that the superior court erred in denying as untimely his request for leave to amend his complaint to add a new PRA claim. Again, we disagree.

We review for abuse of discretion a trial court's ruling on a motion to amend the complaint. *Caruso v. Local Union No. 690 of Int'l Bhd. of Teamsters*, 100 Wn.2d 343, 351, 670 P.2d 240 (1983). A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971). To amend a pleading after the opposing party has responded, the party seeking to amend must obtain the trial court's leave or the opposing party's consent. CR 15(a). A trial court must grant leave freely "when justice so requires." CR 15(a). But undue delay is a proper ground for denying leave to amend. *Elliott v. Barnes*, 32 Wn. App. 88, 92, 645 P.2d 1136 (1982); *see also Wilson v. Horsley*, 137 Wn.2d 500, 507, 974 P.2d 316 (1999) (request to amend on eve of trial supported denial of leave to amend).

Here, Gronquist requested leave from the superior court to file a second amended complaint on January 31, 2012, more than two and a half years after he filed his first amended complaint and DOC filed its answer, and more than one year after the superior court dismissed his remaining PRA claims. Moreover, Gronquist has neither designated any record nor identified in his brief any reason to show why the superior court erred in ruling that his motion to amend was untimely. *See* RAP 10.3(a)(6) (Appellant must provide argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record). "Such '[p]assing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration.'" *West v. Thurston County*, 168 Wn. App. 162, 187,

16

275 P.3d 1200 (2012) (alteration in original) (quoting *Holland v. City of Tacoma*, 90 Wn. App. 533, 538, 954 P.2d 290 (1998)). Thus, we do not further consider this unsupported argument.

## VI. ART I, § 5 CLAIMS

Gronquist next argues that Stafford Creek's seizure of some of the PRA documents DOC had mailed to him violated his freedom of speech contrary to article I, section 5 of the Washington Constitution. He also argues for the first time on appeal that RCW 72.09.530 is unconstitutionally overbroad. These claims fail.

### A. Mail Room Seizure Claim Abandoned

"It is a long-standing rule that abandoned issues will not be addressed on appeal." *Green v. Normandy Park*, 137 Wn. App. 665, 688, 151, P.3d 1038 (2007); RAP 2.5(a).[19] In his memorandum in support of his motion requesting leave to amend his complaint, Gronquist notified the superior court that since bringing his original complaint alleging his art. I, § 5 challenge, DOC had "produced the previously censored records at issue" and that the production of these records rendered his art. I, § 5 claim "moot."[20] Suppl. CP at 476, 477. The record

---

[19] *See also Peck v. Davies*, 154 Wash. 559, 563, 283 P. 173 (1929); *Gregory v. Peabody*, 138 Wash. 591, 597, 244 P. 998 (1926); *Buckeye Buggy Co. v. Montana Stables, Inc.*, 43 Wash. 49, 51, 85 P. 1077 (1906); *Soderberg Adver., Inc. v. Kent–Moore Corp.*, 11 Wn. App. 721, 737, 524 P.2d 1355 (1974); *Stratton v. U.S. Bulk Carriers, Inc.*, 3 Wn. App. 790, 793–94, 478 P.2d 253 (1970).

[20] Gronquist argues that (1) his first amended complaint raised both "facial" and "as applied" free speech challenges, (2) the superior court dismissed the "facial" challenge in response to DOC's motion to dismiss, and (3) he abandoned only his "as applied" challenge as "moot." Reply Br. of Appellant at 10-11. But after a careful review of the record on appeal, we conclude that Gronquist's characterization of his first amended complaint is inaccurate: Gronquist alleged that DOC's censorship of public records "violate[d] the Free Speech Clause of Article I, Section 5 of the Washington State Constitution." CP at 324. Contrary to his assertions on appeal, his first amended complaint did not raise two separate free speech challenges.

shows that the superior court relied on Gronquist's assertion that his claim was "moot" when it dismissed his art. I, § 5 challenge and denied Gronquist's motion requesting leave to amend his complaint to add a new PRA claim that DOC failed "to locate, identify, and allow inspection of records relating to . . . staff involvement in the assault of Mr. Gronquist." Suppl. CP at 477. Thus, there was no reason for the superior court to consider this claim further; similarly, there is no justiciable issue for us to address in this appeal. Holding that Gronquist abandoned his free speech challenge below, we do not further consider Gronquist's "facial" challenge on appeal.

### B. RCW 72.09.530 Constitutionality Claim Moot

Gronquist also argues for the first time on appeal that that RCW 72.09.530, which prohibits an inmate's "receipt or possession of anything that is determined to be contraband," is unconstitutionally overbroad. Even assuming, without deciding, that Gronquist can raise this argument in his reply brief, we disagree that he is articulating a "manifest constitutional error that may be raised for the first time on appeal" under RAP 2.5(a)(3),[21] especially in light of the mootness of this claim. Reply Br. of Appellant at 12 (citing RAP 2.5(a)(3)).

As a general rule, Washington appellate courts will not address "moot questions or abstract propositions." *Norman v. Chelan County Pub. Hosp. Dist. No. 1*, 100 Wn.2d 633, 635,

---

[21] Moreover, Gronquist's argument—that RCW 72.09.530 is unconstitutionally overbroad—is not an "error" that was "manifest" in any proceeding below; rather, it is a challenge to the constitutionality of the statute itself and not an error committed by the superior court. *See State v. Grimes*, 165 Wn. App. 172, 187, 267 P.3d 454 (2011), *review denied*, 175 Wn.2d 1010 (2012) (for RAP 2.5(a)(3) to apply, an appellant must show both that (1) the error implicates a specifically identified constitutional right, and (2) the error is "manifest," in that it had "practical and identifiable consequences" in the trial below). Merely challenging the constitutionality of the statute does not permit Gronquist to avail himself of RAP 2.5(a)(3)'s exception to the general rule precluding review of issues not preserved below.

No. 42774-5-II (consolidated with No. 43500-4-II)

673 P.2d 189 (1983) (quoting *Sorenson v. Bellingham*, 80 Wn.2d 547, 558, 496 P.2d 512 (1972)). An appeal is moot where it presents "purely academic"[22] questions and where "'the court cannot provide the basic relief originally sought, or can no longer provide effective relief.'" *IBF, LLC v. Heuft*, 141 Wn. App. 624, 630-31, 174 P.3d 95 (2007) (internal quotation marks omitted) (quoting *Josephinium Assocs. v. Kahli*, 111 Wn. App. 617, 622, 45 P.3d 627 (2002)). Because Gronquist has since received the records that Stafford Creek seized in the mail room, we cannot afford him any relief. Thus this issue is moot, and we need not further address it.

We affirm.

A majority of the panel having determined that this part of the opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Hunt, J.

We concur:

Worswick, C.J.

Maxa, J.

---

[22] *City of Sequim v. Malkasian*, 157 Wn.2d 251, 258, 138 P.3d 943 (2006) (internal quotation marks omitted) (quoting *State v. Turner*, 98 Wn.2d 731, 733, 658 P.2d 658 (1983)).