# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of: | No. 58577-4-II |
| THE GILBERT MILLER TESTAMENTARY CREDIT SHELTER TRUST, | |
| Appellants/Cross-Respondents, | |
| and | |
| THE ESTATE OF MARY EVELYN MILLER, | UNPUBLISHED OPINION |
| Respondent/Cross-Appellant. | |

LEE, J. — The beneficiaries of a testamentary credit shelter trust (CST) (collectively, the Beneficiaries) appeal the superior court's judgment declining to impose a constructive trust over the Estate of Mary Evelyn (Evelyn) Miller's interest in a commercial property, which was allegedly intended to be included in the CST. Specifically, the Beneficiaries argue that the superior court erred when it focused on Evelyn's intent to benefit the Beneficiaries rather than Evelyn's intent to convey her interest to the CST.

For this case, we sit as a court of equity and not as a court of law. Here, the Beneficiaries seek in equity to impose a constructive trust over assets they are not legally entitled to. Because, in this setting, constructive trusts arise to give effect to the decedent's intent and because the Beneficiaries failed to establish by clear, cogent, and convincing evidence that Evelyn intended to benefit them, we hold that the superior court did not err when it declined to impose a constructive trust.

Evelyn's estate (the Estate) cross-appeals the superior court's order denying the Estate's postjudgment motion to amend judgment to add money damages. This ruling meant, in effect, that the superior court determined the Estate has always owned half of the commercial property at issue, but did not require the Beneficiaries to account to the Estate for its half share. The Estate argues the superior court erred when (1) it declined to include money damages in the final judgment, (2) it found that the Estate failed to make a proper claim for damages, and (3) it failed to compel the CST trustee to provide a complete accounting so as to determine the Estate's share of the CST proceeds.

Because the Estate requested its share of the CST assets in a request for relief in a responsive pleading and motion to dismiss, we hold that the superior court erred when it found that the Estate failed to make a proper claim for relief. Additionally, because the superior court reserved the issue of damages for further proceedings, the judgment was not final and the superior court abused its discretion by entering a final judgment.

Accordingly, we affirm, in part, the superior court's judgment declining to impose a constructive trust on the Estate's interest in property at issue. However, we reverse, in part, the judgment to the extent the superior court declined to reach remedial relief for the Estate and remand for the superior court to order an equitable accounting and for further proceedings consistent with an adjudication that resolves all claims, rights, and liabilities.

No. 58577-4-II

FACTS

A. BACKGROUND

Gilbert (Gib) and Evelyn[1] Miller were married and had one daughter, Leah Miller Owens. *In re Gilbert Miller Testamentary Credit Shelter Tr.* (*Miller* I), 13 Wn. App. 2d 99, 101, 462 P.3d 878 (2020).[2] Gib and Evelyn owned certain commercial real estate (the Corner Property) as community property. *Id.*

Gib and Evelyn worked with attorney Ralph Olson to draft their wills. Olson had recommended the Millers include trusts within their wills "for avoidance of estate taxes." Clerk's Papers (CP) at 112. In 1996, Gib executed a will,[3] which provided for the creation of a "Credit Shelter Trust." CP at 15; *Miller* I, 13 Wn. App. 2d at 102. Article III of Gib's will stated, in pertinent part:

> If my wife survives me, I give my trustee . . . a portion of my estate equal to the largest amount that can pass free of federal estate tax under this article by reason of the unified credit and the state death tax credit (provided the use of this credit does not require an increase in any state death taxes paid) allowable to my estate . . . . I recognize that the sum established by this paragraph may be zero and may be affected by the actions of my Personal Representative in exercising certain tax elections. Such assets shall be held in trust for the benefit of my wife and descendants . . . . The Credit Shelter Trust [CST] shall first be funded to the maximum provided for above before the marital deduction trust is funded at all. Except as specifically provided for, it shall be at the sole discretion of my Executor

---

[1] This opinion references several members of the Miller family and will use first names to avoid confusion. No disrespect is intended.

[2] The parties previously appeared before this court regarding the appeal of a summary judgment order from the superior court, resulting in a published opinion. *Miller* I, 13 Wn. App. 2d at 101. Many of the pertinent facts in this matter are the same as in *Miller* I and undisputed by the parties; thus, this opinion will cite to *Miller* I in addition to the record.

[3] In 1997, Gib executed a codicil to his will. However, the terms of his codicil do not impact the provisions of the will at issue.

3

which assets shall be transferred either to the Credit Shelter Trust or the Residual/Marital Deduction Trust.

CP at 15-16. The will named Evelyn as beneficiary of the CST. Upon Evelyn's death, Gib's estate, including the remainder of the CST, would be distributed to Leah.

Article VI of Gib's will, titled "Provisions for Children and More Remote Descendants," further provided:

If my wife shall not survive me and if there be no then living descendants of mine, the Trust Estate then remaining shall be distributed, one-half (1/2) to my wife's then living heirs and one-half (1/2) to my then living heirs.

CP at 19.

Gib passed away in November 1998. *Miller* I, 13 Wn. App. 2d at 102. The federal estate tax exemption in 1998 was $625,000. Evelyn was appointed personal representative of Gib's estate.[4]

In August 1999, Evelyn and Leah met with Olson. Olson sent Evelyn and Leah a letter confirming what they had discussed, which included a plan to transfer the Corner Property into the CST created by Gib's will. Olson stated he would "prepar[e] a deed for Evelyn to sign all the realty to 'Evelyn Miller & Leah Owens Co-Trustees of the Gilbert Miller Testamentary Trust.'" Ex. 4, at 1.

At the time of Gib's death, the Corner Property was valued at $627,000. Evelyn's accountant filed the tax return for Gib's estate, which stated that the CST would be funded to the

_____

[4] Gib appointed Leah as his personal representative in his will; however, Leah declined to serve as personal representative, and Evelyn was appointed personal representative of Gib's estate.

full exemption amount, or $625,000. The estate tax return also identified Gib's estate's one-half interest in the Corner Property as $313,500.

In October 1999, Olson instructed tenants of the Corner Property to address their rental payments to the CST going forward. In December 1999, Evelyn, acting as personal representative, signed a deed conveying Gib's estate's interest in the Corner Property to the CST. However, Evelyn never signed a deed conveying her one-half community interest in the Corner Property to the CST.

In March 2000, Olson sent a letter to Leah, which confirmed the transfer of Gib's interest. Olson wrote:

> [W]e are in good shape with the good news from the IRS and we are requesting the Washington State Tax Division issue their release so that we can file both of them with the County Clerk. When that is done we will go back to make sure that we have maximized the contribution to the [CST]. As you know, we already transferred Gib's half interest in the [Corner Property] to . . . the [CST]. We may be able to squeak out a little bit more but I'll have to check the numbers again.

CP at 219. In April 2000, Evelyn filed a declaration of completion of probate.

From 1999 onward, Evelyn, Leah, Olson, and all others treated the Corner Property as if it was wholly owned by the CST. All income and expenses associated with the Corner Property were reported on CST tax returns. Evelyn never claimed ownership of the Corner Property on her individual taxes, nor did she claim expenses or pay any management fees associated with the property. Similarly, agreements with other entities, lease payments, and a real estate excise tax affidavit all identified the CST as owner of the Corner Property.

George Braly served as Evelyn's accountant starting in 2007. Braly prepared both Evelyn's individual tax return and the CST return. According to Braly, Evelyn always provided

Braly with a single sheet of paper listing information regarding the CST for his preparation of the CST return. Braly never saw any underlying documentation regarding the CST nor was he aware of how it was funded.

In 2011, Leah died. In June 2012, Evelyn revised her will. *Miller* I, 13 Wn. App. 2d at 102. Evelyn's 2012 will contained some specific bequests and then directed that the residue of her estate be held in trust and "used for economic development for the City of Winlock."[5] CP at 76. Rene Remund, the attorney who assisted Evelyn with drafting her 2012 will, mistakenly assumed that the entirety of the Corner Property was owned by the CST. Thus, he never specifically discussed ownership of the Corner Property with Evelyn when drafting her will.

However, Remund mentioned to Evelyn that the CST would likely pass to remote relatives because its terms were silent as to beneficiaries in the event Leah predeceased Evelyn. According to Remund, Evelyn did not wish for the CST to pass to remote relatives. Nevertheless, Evelyn, who was 99 years old at the time, did not begin the process of amending the CST as it would have required her to go to court and possibly participate in a trial. In October 2012, Evelyn passed away.

Evelyn was known to others as "independent, very bright, and a firm-minded organizer." 1 Verbatim Rep. of Proc. (VRP) (Feb. 23, 2022) at 27. Evelyn possessed a "single mindedness about almost anything in which she was involved" and actively managed her own stock portfolio up until her death. 1 VRP (Feb. 23, 2022) at 27.

---

[5] Both Gib and Evelyn had strong family connections to the city of Winlock. Winlock was named for Winlock Miller, an ancestor of Gib's. Evelyn's family members included a mayor and a police chief of Winlock. Additionally, Gib and Evelyn ran an appliance store in Winlock.

B.     DISPOSITION OF THE CST ASSETS

1.     Determination of the Beneficiaries and Discovery of Evelyn's Ownership Interest

Evelyn's 2012 will was admitted to probate. The terms of the CST did not provide for what would happen to CST assets in the event Leah predeceased Evelyn. In July 2014, the personal representative of Evelyn's estate filed a TEDRA[6] petition to appoint a successor trustee of the CST and to determine the CST beneficiaries in accordance with Article VI of Gib's will.

Olson submitted a statement regarding Evelyn's and Gib's intent regarding the CST. Olson wrote:

> Based upon my advice, the Miller wills were drafted with tax consequences in mind, allowing the survivor as between the two of them to disclaim property into trust, thereby reducing the potential for taxation upon the estate of the survivor.
>
> Inclusion of trusts within the wills was for avoidance of estate taxes. Neither party expressed to me any concern regarding the ability of the other to manage financial assets. Neither party requested me to arrange for their estates to be held in trust, other than agreeing with my suggestion that a trust be used to avoid potential estate taxes in the future.
>
> In discussing distribution of assets other than to the surviving spouse and their child, Leah Miller Owens, the only specific persons mention[ed] by the Millers were nephews . . . . The Millers removed both of the specific beneficiaries by Codicils I prepared for them in 1997.
>
> The Millers did not express to me a desire to benefit any other specific relative. My recollection of the drafting and inclusion of paragraph 4 is that I suggested and used a format I had used in other estate plans. At the time, due to the ages of the Millers, the likelihood was that Leah Miller Owens would survive and inherit the trust assets.
>
> I intended by my draft, and I believe the Millers understood and intended, that in the event Leah Miller Owens did not survive and receive proceeds of the

---

[6] TEDRA is Washington's Trust and Estate Dispute Resolution Act, chapter 11.96A RCW. RCW 11.96A.900.

7

trust, the trust would be distributed one-half to the heirs of Evelyn and Gilbert living as of the date of the survivor's death.

CP at 186-87.

On December 18, 2015, the superior court entered an order establishing beneficiaries of the CST and authorizing distributions. The Beneficiaries were determined to be 30 nieces, nephews, grand-nieces, and grand-nephews of Gib and Evelyn (essentially, Gib's and Evelyn's intestate heirs following the death of their only daughter). None were particularly close to Gib or Evelyn. In many cases, it had been several decades since the nieces and nephews had any contact with Evelyn, if they had even met her at all. The nieces and nephews did not distinguish between Gib's and Evelyn's estates and from which they received distributions. One niece stated: "The only thing that I am sure about with Evelyn is that I'm related. I have no claims as far as anything . . . that [Evelyn] promised me or that we talked about at any certain time." CP at 540.

However, fifteen days before entry of the order, Remund reported a new discovery. Following contact with a potential buyer and review of a title report, Remund discovered that only Gib's estate's one-half interest in the Corner Property had been conveyed to the CST and not Evelyn's one-half interest. Nevertheless, after the superior court's order establishing beneficiaries and authorizing distributions, the parties appeared to agree that the CST trustee could proceed with making some distributions to the Beneficiaries. In a December 2015 email, Remund wrote to the CST trustee:

> As you may know, the ownership of the parcels yet to be sold is currently shown as owned one-half by the trust and one half by Evelyn's estate.
> There will need to be a determination of whether the record ownership is correct resulting in the trust assets being reduced.
> I believe that the transmittal letter for the distribution should advise the heirs of this issue. If the trust only holds a fifty percent interest in the property, a future

distribution will have to be adjusted to compensate Evelyn Miller's estate for the amount now distributed to the trust [Beneficiaries].

. . . .

As representative of Evelyn's estate, I consent to distribution of currently held trust funds to the trust [Beneficiaries] in order to reduce taxation. The distribution can be equalized from a future distribution if Evelyn's estate has ownership interest in the property.

CP at 1084.

The trustee proceeded with distributions to the Beneficiaries; however, the trustee did not make any distributions to the Estate, nor did the Estate request the trustee hold back any distributions or contribute to CST expenses.

2.      2017 TEDRA Petition

In 2017, the Beneficiaries filed a petition for declaration of rights to real property and requested a trial on the matter to resolve ownership of the now-disputed one-half interest in the Corner Property. The Estate filed a responsive pleading and a motion to dismiss,[7] arguing in part that Evelyn's one-half interest in the Corner Property should pass pursuant to Evelyn's 2012 will. The Estate argued the only intended beneficiaries of the CST were Evelyn and Leah, and that Gib and Evelyn never intended to benefit anyone other than Evelyn and Leah with the CST.

In its request for relief, the Estate asked the superior court to "[c]onfirm one half ownership of the [Corner Property] in the Estate of Mary Evelyn Miller" and "[r]equire the trustee of the Gib

---

[7] Both parties advanced multiple legal theories at different stages of litigation in this matter. Several of those arguments, such as statutes of limitation and a court's authority to intervene, were addressed in *Miller* I. *See generally Miller* I, 13 Wn. App. 2d at 101. Because we are asked to resolve the narrower issue of whether a constructive trust is appropriate, this opinion discusses only the facts that relate to the imposition of a constructive trust.

Miller Credit Shelter Trust to account for all income and expenses since discovery of the error and pay one half of the net proceeds to the Estate of Mary Evelyn Miller." CP at 68.

In reply, the Beneficiaries argued that the superior court should impose a constructive trust over the one-half interest owned by the Estate. The Beneficiaries contended that Evelyn's conduct indicated her intent to transfer her interest in the Corner Property to the CST and that to determine otherwise would result in the unjust enrichment of her 2012 will beneficiary—the city of Winlock. The superior court denied the Estate's motion to dismiss and directed the matter be set for trial.

In February 2018, the Estate filed a motion for summary judgment, again arguing in part that the undisputed evidence demonstrated that Evelyn intended to leave her estate to the city of Winlock. The superior court denied the Estate's motion and granted summary judgment in favor of the Beneficiaries. *Miller* I, 13 Wn. App. 2d at 103. As part of its summary judgment order, the superior court imposed a constructive trust over the Estate's one-half interest in the Corner Property for the benefit of the CST and Beneficiaries.

3.     Appeal and Remand

The Estate appealed to this court. *Id.* We reversed summary judgment and the imposition of a constructive trust, holding that "material issues of fact remain[ed] as to Evelyn's intent with regard to the disposition of her one-half interest in the [Corner Property]." *Id.* at 101.

On remand, the superior court held a two-day trial in February 2022. Following trial, the superior court issued a memorandum decision, finding that Evelyn intended to transfer her interest in the Corner Property into the CST and again establishing a constructive trust over Evelyn's interest in favor of the Beneficiaries.

But in June 2022, the Estate moved for reconsideration. The Estate asserted that "[t]he evidence [was] clear from Evelyn's Will that she did not intend to benefit [the Beneficiaries]" and that a constructive trust was inappropriate in the circumstances. CP at 619. During the motion hearing, the Estate argued:

> [The Beneficiaries] have focused on the intent to fund the trust when, in fact, the equitable question is whether Gib and Evelyn intended to benefit these [Beneficiaries]. The record is clear, as set forth in Mr. Olson's declaration, the only intention and expectation of the Millers was to benefit their daughter Leah. There is no reason whatsoever for the Court to take Evelyn's property, contrary to the terms of her will, and give it to people neither she nor her husband ever intended to benefit.

1 VRP (June 29, 2022) at 8.

In contrast, the Beneficiaries argued that the dispositive question was Evelyn's intent to fund the CST: "The only question to be addressed was what Evelyn intended with respect to her one-half interest in the commercial property. The intent is that the [CST] is funded, not who takes under the [CST]." 1 VRP (June 29, 2022) at 12.

The superior court agreed with the Estate. The superior court stated:

> The Court of Appeals directed me to answer certain questions . . . but it did not say whether a constructive trust would be an appropriate remedy or not in this case.
>
> . . . [A]t the trial I viewed the proceedings and the facts through the lens of the questions framed by the Court of Appeals, and I concluded that the imposition of constructive trust was necessarily tied to the answer to those questions.
>
> I found, and I stand by my findings, that it was Evelyn's intent to fully fund the trust with the entirety of the Corner Property. However, it's also clear that neither she nor Gib intended the [Beneficiaries] to inherit the bulk of their estates. The oversight which led us all here was that there was no designated beneficiary to the [CST]. It was clear that at the time of the formation of the [CST] it was both Gib's and Evelyn's intent that Leah inherit the bulk of their estates. In the absence

11

of a designated beneficiary to the [CST], the personal representative concluded that the unknown intestate heirs would be the beneficiaries.

My mistake in my analysis of the case was that the answer to the questions posed by the Court of Appeals necessarily controlled my decision to form a constructive trust. I didn't see that I had a choice if I answered the Court of Appeals' questions in the affirmative that . . . Evelyn intended to fully fund the [CST] with . . . the entirety of the Corner Property, then it would follow necessarily that a constructive trust must be imposed.

But given the clear evidence that neither Gib nor Evelyn intended the [Beneficiaries] to inherit the entirety of that property, the fact that Evelyn clearly intended that the City of Winlock receive the bulk of her estate, I can't find by clear, cogent and convincing evidence that the formation of a constructive trust is necessary to secure equity for the [Beneficiaries]. They're entitled to that which was in the [CST], which amounts to Gib's half interest in the Corner Property.

This outcome is not inconsistent with my memorandum decision, which focused almost solely on the question of Evelyn's intent with regard to her half interest in the Corner Property. My memorandum opinion did not go into an analysis of the . . . propriety . . . of establishing a constructive trust, as I erroneously believed that the outcome was dictated by my finding regarding her intent with the Corner Property.

But given the high burden of clear, cogent and convincing evidence, I can't find that it was her intent to confer that benefit upon the [Beneficiaries].

1 VRP (June 29, 2022) at 19-21. The superior court granted the Estate's motion to reconsider.

4. Entry of Judgment

The parties spent several months attempting to agree on a written memorialization of the superior court's ruling. In February 2023, the superior court entered findings of fact (FOF) and conclusions of law (COL). In its findings, the superior court stated, in relevant part:

23. Neither Gib nor Evelyn intended the [Beneficiaries] to inherit from their estates, nor did Olson expect them to inherit unless Leah did not survive them.

. . . .

32.	[The Beneficiaries] have failed to establish by clear, cogent and convincing evidence that Gib or Evelyn intended [the Beneficiaries] to inherit the bulk of their estates or that the imposition of a constructive trust is necessary to secure equity to the [Beneficiaries].

33.	There is clear, cogent and convincing evidence that Evelyn intended to benefit the City of Winlock in her will prepared in 2012 shortly before her death.

CP at 685-88. In its conclusions of law, the superior court stated in part:

2.	[The Beneficiaries'] claim is an equitable claim.

3.	Evelyn's one-half of the Corner Property was never transferred to the CST, though she intended it to be and treated it as if it had been so transferred.

4.	Evelyn's intent to convey her one-half interest in the Corner Property to the CST and thus to fully fund the CST with the entirety of the Corner Property has been shown by clear, cogent, and convincing evidence.

5.	The CST made no provision for the [Beneficiaries] if Evelyn and Leah survived Gib, but Leah predeceased Evelyn. This court established the [Beneficiaries] . . . through a separate TEDRA proceeding.

6.	[The Beneficiaries] have failed to meet their burden to establish by clear, cogent and convincing evidence that a Constructive Trust should be imposed over Evelyn's one half of the Corner Property that was never transferred to the CST and the proceeds therefrom.

. . . .

15.	The Trustee of the CST is also instructed to provide a full accounting of all of the income and disbursements to and from the CST since October 18, 2012 (Evelyn Miller's date of death). The issue of reimbursement to the Estate of Evelyn Miller is reserved.

CP at 688-90.

Three months later, in May 2023, the Beneficiaries filed a motion for entry of judgment. The Beneficiaries argued that under CR 54(e), the Estate was required to prepare a judgment and provide it no later than March 2023. The Beneficiaries noted that the Estate had requested an

13

accounting from them in conjunction with the superior court's COL 15, without which the Estate

argued it could not prepare a judgment for entry. However, of COL 15, which instructed the CST

trustee to provide an accounting, the Beneficiaries argued:

> There is no corresponding [FOF] to support this conclusion and there was no evidence presented at trial as to income and disbursements at all. This was entirely a case in equity, not one for money damages. Certainly, [t]he Estate of Mary Evelyn Miller can pursue whatever course of action it chooses, but any money judgment in this trial or any money award as a part of this judgment is improper.

CP at 693.

The Estate argued that COL 15 required the CST trustee to provide an accounting, which

the trustee had so far failed to do. The Estate further argued that the superior court's decision

necessitated a final judgment that included money damages.

During the motion hearing, the Beneficiaries contended:

> The Estate has never made a counterclaim in this case. They're required to make a counterclaim in response to the initial petition under both TEDRA and under CR 13. They did not. They did not claim a set-off. They provided no evidence at trial . . . as to the amount of claimed damages. . . . They can still make claims against the proceeds for one-half of the proceeds and the trustee might very well agree, but it's not before this court at this time.

1 VRP (May 16, 2023) at 57-58. Notably, while this was the first time the Beneficiaries argued

the Estate had been required to put on evidence at trial permitting the calculation of any amount it

was owed by virtue of establishing its one-half ownership in the trust assets, the Beneficiaries at

this point still agreed the Estate could "make claims against the proceeds." 1 VRP (May 16, 2023)

at 58. At this hearing, the Beneficiaries argued that they were preparing the previously ordered

accounting, stating, "[W]e have been working on it," and "[The Estate] can certainly bring a post-

trial motion. [The court has] reserved future proceedings, the determination of those things." 1

VRP (May 16, 2023) at 61.

In response, the Estate argued:

The Court wouldn't have ordered the trustee to produce an accounting . . . if the Estate wasn't entitled to money damages. The reimbursement for the Estate wouldn't have been reserved by this Court if the Estate . . . wasn't entitled to money damages.

　　The only reason that the Estate hasn't presented its own final judgment, and we have told [the Beneficiaries'] counsel this several times, is that we can't submit a final judgment without the accounting. The accounting was ordered three months ago. We have been promised it. We haven't seen anything. . . .

　　. . . .

　　This judgment is not final. It is a partial judgment . . . . There is absolutely no reason to delay entry—no good reason to delay entry of the judgment settling all of the issues in this case. . . . The Court has ruled. The Estate is entitled to half the funds in the [CST]. We haven't seen any of the documentation, and we're entitled to it. And once we have that, we can enter a final judgment.

1 VRP (May 16, 2023) at 65-67.

The superior court declined to enter judgment, stating it believed any judgment would not

be final. The superior court stated:

I'm not going to enter a final judgment at this point because I don't believe it would be a final judgment. And I'm hopeful that very soon we will have . . . a dollar amount that we can use to do a final judgment. Everything points to that, and so I don't see necessarily rushing this before we have that, when I believe we can have that.

　　. . . And it doesn't seem like this is an amount that's going to really be in controversy, at least I don't anticipate this . . . .

　　. . . So I'm not going to enter a final judgment at this time. I am going to sign the order denying the motion for entry of judgment, just because it makes it clear and puts in order that which was previously . . . a conclusion of law, which should have been an order.

1 VRP (May 16, 2023) at 71-72. In its order denying the Beneficiaries' motion for entry of judgment, the superior court ordered that the "Trustee of the [CST] comply with this Court's Conclusion of Law Number 15, dated February 24, 2023, by May 26, 2023 so the Court can calculate the damages owed to the Estate." CP at 734-35.

Following the superior court's order, the CST trustee provided an accounting, and based on that accounting, the Estate proposed a final judgment containing monetary relief. The Beneficiaries opposed the proposed final judgment, now arguing that the monetary relief was "wholly unsupported in the record, was not raised at trial, and for which no pleading has ever been made." CP at 738. Now 17 months after trial, the Beneficiaries argued for the first time the Estate had in fact waived its rights by not putting on evidence at trial permitting the calculation of its share of the CST assets.

On August 22, 2023, the superior court held a hearing for the Estate to present its proposed order. The superior court questioned the Estate as to whether the Beneficiaries had proper notice of the Estate's damages request. The Estate pointed to the request for relief it made in its 2017 motion to dismiss, which "specifically ask[ed] for an accounting and to repay the Estate," along with correspondence dating back to 2015 submitted in the record. 1 VRP (Aug. 22, 2023) at 77. In response, the Beneficiaries argued that the Estate "never made an affirmative claim" for damages. 1 VRP (Aug. 22, 2023) at 83.

The superior court agreed with the Beneficiaries and declined to enter the Estate's proposed judgment. The superior court stated:

> I'm going to decline to enter the judgment as has been proposed. The issues at trial were framed by the Court of Appeals, and the issue was a factual issue for the Court

16

to resolve, and that was with regard to some questions the Court of Appeals had as to Evelyn's intent for the funding of the Credit Shelter Trust.

And while it may be that resolving that factual issue has consequences and logical consequences that may include a monetary claim or entitlement to the Estate for compensation, that doesn't relieve the Estate of its procedural requirements to put the other party on notice to a counterclaim or a cross-claim such as the [TEDRA] statute requires and as due process requires.

And I find that that last line of the Motion to Dismiss that was filed back in June of 2017 that states the trustee should pay one-half of the net proceeds to the Estate is not sufficient to establish a counterclaim for me to enter this judgment.

. . . At a minimum, due process requires notice and opportunity to be heard, and the lack of that notice is demonstrated by the fact that no evidence was presented at trial for this Court to ascertain the monetary amount that the Estate may be entitled to.

And none of that evidence has been put before me in a form that is subject to cross-examination and scrutiny that I believe is required for the trier of fact. The rules require that notice be given of pleadings, and I don't find that the notice that was given within the pleadings is sufficient for me to impose the judgment that was requested by the Estate.

Instead, I'm adopting the suggestion by the [Beneficiaries] that the judgment reflect that the petition is denied and the Estate is entitled to judgment consisting of one-half interest in the property and perhaps proceeds of the sale and other income. However, I'm just not at this point prepared to enter the judgment, the monetary judgment, in the amounts that the Estate has requested.

1 VRP (Aug. 22, 2023) at 94-95.

The Estate asked the superior court to entertain "a post-trial hearing" as the Beneficiaries had suggested at the May 2023 hearing. 1 VRP (Aug. 22, 2023) at 95. The superior court expressed concern that the Beneficiaries' position, "which may be correct," was now that a new TEDRA petition was required to determine the Estate's share of the CST assets, but said "it makes sense to me that if the parties are in agreement, that we schedule a hearing to determine that so that can be before the Court." 1 VRP (Aug. 22, 2023) at 96. In further colloquy, the Beneficiaries'

counsel said, "[W]hen I said 'post-trial proceedings,' they will still have to make a claim, a cognizable claim that allows us to respond to the claim and assert defenses." 1 VRP (Aug. 22, 2023) at 97. The Beneficiaries then referred to "clear guidance from Miller 1" on "what the statute of limitations on unjust enrichment is," and asserted that if the Estate now sought to "make a claim," it was the Beneficiaries' right "to defend vigorously against those things."[8] 1 VRP (Aug. 22, 2023) at 97-98. Without ruling on the procedural propriety of one, the superior court invited the Estate to bring a motion and the superior court would proceed.

On August 25, 2023, the Estate filed a motion to determine money damages. The Estate requested a total judgment of $563,378.19, which included principal and prejudgment interest at a statutory rate of 12%. In its motion, apparently in response to the Beneficiaries' contention that the Estate never pleaded damages, the Estate argued, "The Estate had no claim against the [Beneficiaries] until the Court denied the [Beneficiaries'] claim to impose a constructive trust. Therefore, the Estate had no counterclaim against the [Beneficiaries], nor was there a claim for

---

[8] *Miller* I held that "[t]he statute of limitations applicable to a common law cause of action for unjust enrichment is three years" and begins to run "when a party has a right to apply to a court for relief." 13 Wn. App. 2d at 108. The transparent implication of the Beneficiaries' August 22, 2023 argument was that—notwithstanding the previous six years of litigation over whether the Estate owned half the assets of the CST—if, having prevailed, the Estate now sought to actually reclaim its half, the Beneficiaries would be entitled to newly assert a limitations bar. They would presumably argue that the limitations period began no later than Remund's December 2015 discovery that Evelyn had never conveyed her half interest to the CST. Any such argument that a new claim is required, subject to the statute of limitations, to actually recover an asset a party has claimed ownership over, and has successfully litigated the issue for six years, defies logic.

money damages by the Estate at trial." CP at 989. The Estate cited RAP 7.2(e)[9] as the basis for its motion.

However, on August 29, 2023, the superior court entered a final judgment. The final judgment stated:

> [T]he right to proceeds from and any beneficial ownership of or claims to title to one half interest in [the Corner Property] is and shall remain in the name of Mary Evelyn Miller, or The Estate of Mary Evelyn Miller, free from any equitable claim of constructive trust in favor of The Gilbert Miller Testamentary Credit Shelter Trust or any [Beneficiaries] of The Gilbert Miller Testamentary Credit Shelter Trust: and it is further
>
> ORDERED, ADJUDGED AND DECREED that any issues of reimbursement to the Estate of Mary Evelyn Miller are reserved for future proceedings.

CP at 1029. Following entry of the superior court's final judgment, the Beneficiaries filed a notice of appeal to this court.

5.      Postjudgment Motion to Amend Money Judgment

In October 2023, the Estate filed a postjudgment motion to amend the final judgment and add money damages.[10] The Estate requested the superior court "to determine the amount of money damages the Estate is entitled to and amend the Judgment entered in this matter to include money damages owed to the Estate." CP at 1050. The Estate again provided its own calculation of what

---

[9] RAP 7.2(e) provides that a trial court "has authority to hear and determine (1) postjudgment motions authorized by the civil rules, the criminal rules, or statutes, and (2) actions to change or modify a decision that is subject to modification by the court that initially made the decision."

[10] The Estate filed a motion seeking permission from this court to file a postjudgment motion regarding money damages in superior court. Because the parties had not yet submitted briefing, we granted the Estate's motion.

it believed the monetary judgment should be and cited to CR 59(g)[11] and CR 60(b)(11)[12] as the basis for the superior court's authority to amend the judgment.

In response, the Beneficiaries argued that the Estate failed to properly plead its claim and needed to bring a new action to seek relief. Additionally, the Beneficiaries asserted that none of the Estate's cited rules provide a legal basis for the relief it requested.

The superior court denied the Estate's motion. During the motion hearing, the superior court reasoned:

> I don't find that the facts in this case and the proceedings in this case allow me to apply the rules that have been cited to summarily impose the judgment that the Estate is asking for. I'm not ruling that it's procedurally barred. I'm not ruling . . . that it's untimely. I'm more focusing on the substance. I simply don't see that the rules that have been cited without any other authority allow me to do what the Estate is asking me to do.
>
> . . . I don't see why there could not have been a counterclaim or any other adequate legal notice of the claim that I'm now being asked to impose after the conclusion of the fact-finding hearing or the trial.
>
> Again, I've been presented with no authority that I find that's on point to allow me to provide the relief that's requested. And I don't find, again, that the civil rules that have been cited themselves allow me to do this. I definitely understand the argument by the Estate and somewhat absurd result that this situation results in, but the law doesn't always provide a perfect outcome and it does not always dictate an equitable outcome.

---

[11] CR 59(g) states: "On a motion for a new trial in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment." Based on its argument and because the Estate did not move for a new trial, it appears the Estate intended to cite CR 59(h), which provides: "A motion to alter or amend the judgment shall be filed not later than 10 days after entry of the judgment."

[12] CR 60(b)(11) provides that a court may grant relief from a final judgment for "[a]ny other reason justifying relief from the operation of the judgment."

> . . . I don't believe that the Estate is without a remedy in this situation, and I think the remedy is by bringing another action under TEDRA. Again, I know all this does is prolongs things and make them more expensive, and that's not what I'm looking to do necessarily, but this appears to me to be a matter under the TEDRA statutes that would allow the Estate to pursue what it is trying to pursue through this post-trial motion.

1 VRP (Nov. 9, 2023) at 20-22.

The Beneficiaries appeal the superior court's February 2023 findings of fact and conclusions of law and the August 2023 judgment. The Estate cross-appeals the superior court's order denying its postjudgment motion to amend judgment to add money damages.

## ANALYSIS

A.   CONSTRUCTIVE TRUST

The Beneficiaries argue that the superior court erred when it declined to impose a constructive trust over Evelyn's one-half interest in the Corner Property. Specifically, the Beneficiaries assign error to the superior court's FOFs 23, 32, and 33, and COL 6. We hold that the superior court did not err.

1.   Legal Principles

A constructive trust is an equitable remedy that courts may impose to compel the legal owner of a property to convey title to one who justly deserves it. *Baker v. Leonard*, 120 Wn.2d 538, 547, 843 P.2d 1050 (1993). Generally, constructive trusts arise in cases of fraud, undue influence, and bad faith. *Id.*; *Miller* I, 13 Wn. App. 2d at 106. However, constructive trusts may also arise in broader circumstances without evidence of wrongdoing. *Miller* I, 13 Wn. App. 2d at 106-07; *Dave Johnson Ins., Inc. v. Wright*, 167 Wn. App. 758, 774, 275 P.3d 339, *review denied*, 175 Wn.2d 1008 (2012).

When there is no wrongdoing, there must be clear, cogent, and convincing evidence of an "equitable base" to impose a constructive trust. *Baker*, 120 Wn.2d at 548; *accord Pitzer v. Union Bank of California*, 141 Wn.2d 539, 548, 9 P.3d 805 (2000). "Evidence is clear, cogent, and convincing if it shows that the ultimate fact in issue is highly probable." *Dave Johnson Ins.*, 167 Wn. App. at 774.

The primary purpose of constructive trusts is to prevent unjust enrichment. *Consulting Overseas Mgmt., Ltd. v. Shtikel*, 105 Wn. App. 80, 87, 18 P.3d 1144, *review denied*, 145 Wn.2d 1003 (2001). Thus, constructive trusts can arise "when retention of property would 'result in the unjust enrichment of the person retaining' the property." *Miller* I, 13 Wn. App. 2d at 107 (internal quotation marks omitted) (quoting *Consulting Overseas Mgmt.*, 105 Wn. App. at 87). Courts may also impose constructive trusts to give effect to a party's intent. *Ames v. Ames*, 184 Wn. App. 826, 851, 340 P.3d 232 (2014). However, if no equitable base exists, courts will not impose a constructive trust. *Pitzer*, 141 Wn.2d at 550. We review de novo whether a constructive trust is appropriate. *Borton & Sons, Inc. v. Burbank Props., LLC*, 196 Wn.2d 199, 207, 471 P.3d 871 (2020).

"We review the trial court's decision after a bench trial to determine whether the substantial evidence supports the findings of fact and whether the findings of fact support the conclusions of law." *Jubitz Corp. v. Dep't of Revenue*, 31 Wn. App. 2d 898, 9007, 553 P.3d 700 (2024). Appellate courts review the trial court's application of facts to law and conclusions of law de novo. *Real Carriage Door Co. v. Rees*, 17 Wn. App. 2d 449, 457, 486 P.3d 955, *review denied*, 198 Wn.2d 1025 (2021). Findings of fact erroneously described as conclusions of law are analyzed as findings of fact. *Id.* Similarly, conclusions of law mislabeled as findings of fact are analyzed as

conclusions of law. *Willener v. Sweeting*, 107 Wn.2d 388, 394, 730 P.2d 45 (1986). "Findings of fact that are unchallenged are treated as verities on appeal." *Jubitz Corp.*, 31 Wn. App. 2d at 907.

2.      Constructive Trust Not Appropriate

The Beneficiaries argue that the superior court erred when it declined to impose a constructive trust, resulting in the unjust enrichment of the Estate and city of Winlock. Specifically, the Beneficiaries contend that Evelyn's intent to fund the CST with the entire Corner Property was sufficient for the superior court to impose a constructive trust, and the superior court erred when it focused on Evelyn's intent to benefit the Beneficiaries.

Conversely, the Estate argues that Evelyn's intent to benefit the specific Beneficiaries is dispositive and that the Beneficiaries failed to establish by clear, cogent, and convincing evidence that Evelyn intended them to ever receive assets from the Estate. We agree with the Estate.

a.      Intent

Constructive trusts can be appropriate to give effect to a party's intent. *Ames*, 184 Wn. App. at 851; *Mehelich*, 7 Wn. App. at 549-50.

The Beneficiaries assert that whether Evelyn intended to benefit them *specifically* is "irrelevant." Br. of Appellants/Cross-Resp'ts at 42. If not for her inadvertent failure to convey her interest to the CST, the Beneficiaries would have received the entirety of the Corner Property proceeds without question, and thus, a constructive trust is appropriate. According to the Beneficiaries, Evelyn passed away knowing "the [Beneficiaries] would take under the CST" and failure to impose a constructive trust results in the unjust enrichment of the city of Winlock. Br. of Appellants/Cross-Resp'ts at 43. But while the Beneficiaries proved at trial that Evelyn intended to place the Corner Property in the CST, the superior court properly concluded that Evelyn never

intended to benefit the Beneficiaries by doing so, such that a constructive trust benefiting the Beneficiaries was not necessary to give effect to Evelyn's wishes.

In *Ames*, without a written agreement, an elderly couple sold their property, which consisted of farmland and timber, to their two oldest sons. 184 Wn. App. at 829. While the sons held title to the property, the couple intended to reserve a life estate, which was "defined as including full possession, management, and control of the real property, improvements, timber, and farm equipment." *Id.* at 830-31. However, title to the property did not reserve the life estate intended by the parties. *Id.* at 849-50. After some dispute between the parties as to management of the land, the couple filed suit against their sons, requesting title. *Id.* at 833. The trial court imposed, and we affirmed, a constructive trust in the life estate on the title because the "overwhelming evidence" supported the "conclusion that the purpose of the transfer to the sons and retention of the life estate was for the purpose of the financial needs of [the couple,] Roy and Rubye Ames." *Id.* at 851.

In *Mehelich*, a father brought an action against his son and daughter-in-law to determine respective interests in proceeds from the sale of a home. *See* 7 Wn. App. at 546. The son and daughter-in-law had originally purchased the home with the intention that the father live in the home the remainder of his life. *Id.* at 548. Over several years, the father made mortgage payments, paid real estate taxes, and expended funds to improve the home. *Id.* at 547-48. The parties, however, never had a specific agreement regarding ownership of the property—the father believed he was buying the property while the son and daughter-in-law believed the father was only renting. *Id.* at 550. The trial court imposed a constructive trust of a life estate in favor of the father. *Id.* at 551. We affirmed, stating:

24

> The confidential relationship that existed between the parties makes it unconscionable to deprive the [father] of a life estate in the property. We hold that under the facts of this case, the situation of trust and confidence manifested in the family relationship of these parties is sufficient to support the trial court's conclusion that a constructive trust ought to be imposed to the extent of a life estate in favor of the . . . father. Indeed, we believe that to hold otherwise would be to allow the unjust enrichment of the [son and daughter-in-law] at the expense of the [father]. The trial court properly avoided such a result by imposing a constructive trust.

*Id.* (citations omitted).

Conversely, in *Pitzer*, the Washington Supreme Court declined to impose a constructive trust in a circumstance where the evidence was clear that a decedent did not intend for the claimants, who were contingent beneficiaries, to take a share of his estate. 141 Wn.2d at 550.

In the cases discussed above, courts employed constructive trusts in circumstances where there was an affirmative intent to benefit *specific individuals* and/or for a specific purpose. These decisions comport with the Restatement (Third) of Restitution and Unjust Enrichment, which provides:

> Constructive trust is the principal device for vindicating equitable ownership against conflicting legal title . . . . A transaction in which the defendant (i) has been unjustly enriched (ii) by acquiring legal title to specifically identifiable property (iii) at the expense of the claimant or in violation of the claimant's rights is one in which—by the traditional formula—the defendant's title to the property is subject to the claimant's equitable interest. This is the state of affairs . . . for which constructive trust is the standard remedy.

RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 55 cmt. a (AM. L. INST. 2011).

The Beneficiaries rely on *Hesthagen v. Harby*, 78 Wn.2d 934, 481 P.2d 438 (1971). In *Hesthagen*, certain intestate beneficiaries received a distribution of the entire estate from the estate administrator, to the exclusion of certain other intestate beneficiaries of the decedent. 78 Wn.2d

at 937-38. The Washington Supreme Court affirmed the imposition of a constructive trust in favor of the plaintiffs, nieces and nephews of the intestate decedent, who had not been notified of proceedings in the decedent's estate. *Id.* at 938-46. The estate administrator had violated his fiduciary duty to identify and notify the beneficiaries, all of whom were readily ascertainable with due diligence. *Id.* at 941-42.

*Hesthagen* is distinguishable. The decedent's intent was not the basis for the court's imposing a constructive trust. As the *Pitzer* court points out, "in *Hesthagen* there was no indication the decedent intended that her property be distributed to someone other than the claimants, who were legally entitled to inherit under the then existing laws of intestacy." *Pitzer*, 141 Wn.2d at 550. Rather, the focus in *Hesthagen*, and the basis for the imposition of the constructive trust, was the violation of the plaintiffs' rights that arose from the administrator's failure to fulfill his fiduciary duty. 78 Wn.2d at 941-46.

Based on the above discussion, we hold that the lack of any intent to benefit the Beneficiaries is dispositive.

       b.      No clear, cogent, and convincing evidence of intent to benefit Beneficiaries

We must next assess whether the record includes clear, cogent, and convincing evidence of Evelyn's intent—in other words, the "equitable base." *Baker*, 120 Wn.2d at 548.

Here, we agree with the Beneficiaries that there is some evidence that Evelyn intended to transfer her interest in the Corner Property into the CST. But there is *no* evidence that Evelyn intended to benefit the Beneficiaries.

The record shows that the primary purpose of the CST was for tax avoidance. Neither Gib nor Evelyn requested to place their assets in trust; rather, the CST was suggested by Olson as a mechanism to reduce estate taxes in the future.

At the time when Evelyn intended to convey her interest in the Corner Property, *Leah* was the beneficiary of the CST after Evelyn. If Leah had survived Evelyn, the CST would have been distributed to her. The Beneficiaries simply would have been residuary beneficiaries without a claim. Indeed, Olson's 2014 statement shows that the Millers only ever had the intent to benefit each other, and after them, Leah. Olson stated that he, along with the Millers, assumed Leah's survival based on their respective ages.

The record also shows that none of the Beneficiaries had any expectation of receiving anything from Gib's or Evelyn's estates, let alone possess a clear understanding of the distinction between the two estates and the CST. In most instances, it had been several decades since the Beneficiaries had seen or spoken to Evelyn, if they had even met or known her at all.

The circumstances here are distinguishable from those in which courts have imposed constructive trusts. Unlike in *Ames* and *Mehelich*, Evelyn never articulated a specific intention to benefit the Beneficiaries. In fact, the record suggests that Evelyn did not wish to benefit the Beneficiaries at all, and if not for her age and health, she may have reformed the CST. The Beneficiaries were not identified until after Evelyn's death; thus, Evelyn had no knowledge of who would actually take under the CST. Additionally, the Beneficiaries did not possess any expectation of distributions from the CST, nor did they have any agreements with Evelyn that indicated a confidential relationship or reliance upon CST distributions. Indeed, regardless of whether a constructive trust is imposed over Evelyn's interest, the Beneficiaries' legal status as takers under

the CST remains the same. There has been no violation of their rights. *Hesthagen*, 78 Wn.2d at 941-46.

Furthermore, unlike in *Hesthagen*, Evelyn did not die intestate. Evelyn's 2012 will clearly demonstrates her intent to benefit the city of Winlock.

The primary purpose of constructive trusts is to prevent unjust enrichment. *Consulting Overseas Mgmt.*, 105 Wn. App. at 87. However, when there is no wrongdoing, there must be clear, cogent, and convincing evidence of an "equitable base" to impose a constructive trust. *Baker*, 120 Wn.2d at 548. The Beneficiaries argue that Evelyn was unjustly enriched by her own property when she inadvertently neglected to convey it to the CST, at a time when doing so would have benefited only herself and, based on the assumption Leah would outlive Evelyn, thereafter only Leah.

Here, there is no evidence of wrongdoing, and there is no clear, cogent, and convincing evidence in the record that Evelyn intended to benefit the Beneficiaries. Moreover, as the Beneficiaries acknowledge, at the time of the inadvertent neglect to convey the property to the CST, the person benefitting from that failure to convey would have been Leah, had she survived Evelyn. The record simply does not show that Evelyn unjustly enriched herself. Thus, because there is no equitable base, equity does not compel the imposition of a constructive trust over Evelyn's one-half interest. Accordingly, we affirm the superior court.

c.     Challenged findings and conclusions regarding constructive trusts

The Beneficiaries challenge FOFs 23, 32, and 33, along with COL 6. We review whether substantial evidence supports the findings of fact and whether those findings support the conclusions of law. *Jubitz Corp.*, 31 Wn. App. 2d at 906-07.

i.      FOFs 23 and 32

FOF 23 states: "Neither Gib nor Evelyn intended the [Beneficiaries] to inherit from their estates, nor did Olson expect them to inherit unless Leah did not survive them."  CP at 685.

FOF 32 states: "[The Beneficiaries] have failed to establish by clear, cogent and convincing evidence that Gib or Evelyn intended [the Beneficiaries] to inherit the bulk of their estates or that the imposition of a constructive trust is necessary to secure equity to the Beneficiaries."  CP at 688.

The Beneficiaries group their arguments regarding FOFs 23 and 32.  They assert the findings are erroneous because Gib's will provided that the CST would be distributed to Gib's and Evelyn's "then living heirs" in the event Leah did not survive Gib and Evelyn.  Br. of Appellants/Cross-Resp'ts at 43.  Thus, the Beneficiaries argue, because of that provision, Evelyn's knowledge of that provision, and Evelyn's failure to reform the CST, the findings are not supported by the record.

Here, the record shows that when Gib drafted his will, despite the provision regarding the "then living heirs," everyone assumed Leah would inherit both his and Evelyn's estates, along with the remainder of the CST.  Olson stated:

> The Millers did not express to me a desire to benefit any other specific relative.  My recollection of the drafting and inclusion of paragraph 4 is that I suggested and used a format I had used in other estate plans.  At the time, due to the ages of the Millers, *the likelihood was that Leah Miller Owens would survive and inherit the trust assets*.

CP at 187 (emphasis added).

Olson's statement demonstrates that the language regarding the "then living heirs" was boilerplate that Olson had pulled from other estate plans.  Neither Gib nor Evelyn had any

knowledge of *who* would actually inherit their estates if Leah did not survive, as the Beneficiaries were not determined until after Evelyn's death. The record suggests that the possibility of Leah predeceasing Evelyn was simply not contemplated. Thus, there is substantial evidence to support FOF 23—that neither Gib nor Evelyn *intended* the Beneficiaries to inherit from their estates. And the same can be said for FOF 32. As discussed in the preceding section, the Beneficiaries failed to establish by clear, cogent, and convincing evidence an equitable base (i.e., a specific intent to benefit the Beneficiaries), which is necessary for the imposition of a constructive trust. Accordingly, we hold that FOF 23 and FOF 32 are supported by substantial evidence.

ii.     FOF 33

FOF 33 states: "There is clear, cogent and convincing evidence that Evelyn intended to benefit the City of Winlock in her will prepared in 2012 shortly before her death." CP at 688.

The Beneficiaries challenge FOF 33 "insofar as that Evelyn could not intend to bequeath to Winlock an asset she believed she had conveyed during her lifetime." Br. of Appellants/Cross-Resp'ts at 3. But here, Evelyn's 2012 will explicitly directed that after some specific bequests, the remainder of her estate was to be held in trust and "used for economic development for the City of Winlock." CP at 76. Thus, FOF 33 is clearly supported by the record. FOF 33 says nothing of specific assets Evelyn intended to bequeath to the city of Winlock. Thus, the Beneficiaries' challenge to FOF 33 is inapposite. We hold that FOF 33 is supported by substantial evidence.

iii.     COL 6

COL 6 states: "[The Beneficiaries] have failed to meet their burden to establish by clear, cogent and convincing evidence that a Constructive Trust should be imposed over Evelyn's one

half of the Corner Property that was never transferred to the CST and the proceeds therefrom." CP at 688.

The Beneficiaries' challenge to COL 6 stems from their argument that Evelyn's intent to fund the CST alone is dispositive when determining whether a constructive trust is appropriate, and not whether she intended to benefit the Beneficiaries specifically. For the reasons discussed in the preceding section, Evelyn's intent to benefit the Beneficiaries is a necessary equitable base to impose a constructive trust. Because the record does not establish with clear, cogent, and convincing evidence that Evelyn intended to benefit the Beneficiaries, as articulated in FOFs 23 and 32, we hold that COL 6 is supported by the superior court's findings.

B.      CROSS-APPEAL: MOTION TO AMEND JUDGMENT

The Estate argues that the superior court erred when (1) it declined to include money damages in the final judgment, (2) it found that the Estate failed to make a proper claim for damages, and (3) it failed to compel the CST trustee to provide a complete accounting so as to determine the Estate's share of the CST proceeds. We hold that the superior court abused its discretion when it determined the Estate failed to plead an adequate request for relief, and therefore, the superior court erred when it entered an incomplete judgment.

1.      Legal Principles

Generally, a final judgment "is an order that 'adjudicat[es] all the claims, counts, rights, and liabilities of all the parties.'" *Rose v. Fritz*, 104 Wn. App. 116, 120, 15 P.3d 1062 (2001) (alteration in original) (quoting *Fox v. Sunmaster Products, Inc.*, 115 Wn.2d 498, 503, 798 P.2d 808 (1990)); CR 54(a). Final judgments leave "nothing for the court to do but to execute the judgment." *Gronquist v. Dep't of Corr.*, 177 Wn. App. 389, 397, 313 P.3d 416 (2013), *review*

*denied*, 180 Wn.2d 1004 (2014). A party may move to amend a final judgment under CR 59 by filing a motion within 10 days from entry of the judgment. CR 59(h).

Appellate courts review the denial of a motion to amend a judgment for abuse of discretion. *Brundridge v. Fluor Fed. Servs., Inc.*, 164 Wn.2d 432, 454, 191 P.3d 879 (2008). "'A trial court abuses its discretion when its decision or order is manifestly unreasonable, or exercised on untenable grounds or for untenable reasons.'" *View Ridge Estates Homeowners Ass'n v. Guetter*, 30 Wn. App. 2d 612, 642, 546 P.3d 463 (quoting *Green v. Normandy Park Riviera Section Cmty. Club, Inc.*, 137 Wn. App. 665, 698, 151 P.3d 1038 (2007), *review denied*, 163 Wn.2d 1003 (2008)), *review denied*, 3 Wn.3d 1016 (2024).

As evidenced by CR 8, Washington is a notice pleading state, meaning a litigant must give the opposing party fair notice of his or her claim. *Pac. Nw. Shooting Park Ass'n v. City of Sequim*, 158 Wn.2d 342, 352, 144 P.3d 276 (2006). The claim need only be "a simple, concise statement" and include "the relief sought." *Id.*; *see generally* CR 8(a). A claim is insufficient when it fails to "'give the opposing party fair notice of what the claim is and the ground upon which it rests.'" *Kirby v. City of Tacoma*, 124 Wn. App. 454, 470, 98 P.3d 827 (2004) (quoting *Dewey v. Tacoma School Dist. No. 10*, 95 Wn. App. 18, 23, 974 P.2d 847 (1999)), *review denied*, 154 Wn.2d 1007 (2005). Nevertheless, courts will construe pleadings "'to do substantial justice,'" and even if a claim is imprecise or mislabeled, it may still provide the notice required under CR 8. *Puget Sound Sec. Patrol, Inc. v. Bates*, 197 Wn. App. 461, 474, 389 P.3d 709 (2017) (quoting CR 8(f)).

2.      Trial Court Abused its Discretion

The Estate argues that the superior court failed to comply with CR 54, which requires a final judgment to fully dispose of a case. Because money damages are still outstanding, the Estate

argues, the final judgment here does not dispose of all the issues. The Estate also asserts that it included a claim for money damages in the original pleadings. We agree.

a.    Sufficient notice

Here, the Beneficiaries first filed their TEDRA petition in 2017, to resolve ownership of Evelyn's one-half interest in the Corner Property. The Estate then filed a "Motion to Dismiss and Response to Petition for Declaration of Rights to Real Property." In that motion and response, the Estate requested the following relief:

> B.    Confirm one half ownership of the [Corner Property] in the Estate of Mary Evelyn Miller.
>
> C.    Require the trustee of the [CST] to *account* for all income and expenses since discovery of the error and *pay one half of the net proceeds to the Estate of Mary Evelyn Miller*.

CP at 68 (emphasis added).

The record shows that the CST trustee had sole access to and control of funds in the CST. The record also shows that as early as 2015, the parties contemplated a scenario in which the Estate would need to be compensated for one-half ownership in the Corner Property.

The request for relief in the Estate's motion to dismiss is a simple, concise statement that includes the relief sought—an equitable accounting and reimbursement to the Estate its share of the CST proceeds. *Pac. Nw. Shooting Park Ass'n*, 158 Wn.2d at 352. Furthermore, courts may construe pleadings to do substantial justice. *Puget Sound Sec. Patrol*, 197 Wn. App. at 474. The record clearly shows that from the beginning of the current TEDRA action, and even prior, the Estate sought its share of the value of CST. Insofar as the Estate's request for relief in the motion to dismiss was imprecise, it still conveyed what the Estate wanted to achieve and put the

Beneficiaries on notice of a claim for reimbursement. *Id.* That is all that is required. CR 8.

Indeed, under the facts of this case, the claim for Evelyn's one-half interest in the Corner Property

necessarily includes the value of that interest. Thus, we hold that the notice requirement of CR 8

was met and that the superior court erred when it determined that the relief requested in the Estate's

motion to dismiss was insufficient to request an equitable accounting and reimbursement.

> b.      Judgment not final

The record shows that the superior court initially appeared to agree with the Estate

regarding the need to determine monies owed prior to entry of a final judgment. In the February

2023 findings and conclusions, the superior court instructed the CST trustee to provide an

accounting:

> 15.      The Trustee of the CST is also instructed to provide *a full accounting* of all of the income and disbursements to and from the CST since October 18, 2012 (Evelyn Miller's date of death). *The issue of reimbursement to the Estate of Evelyn Miller is reserved*.

CP at 690 (emphasis added). The accounting was never completed.

In May 2023, the superior court still declined to enter a final judgment, pending a "dollar

amount." 1 VRP (May 16, 2023) at 71. The superior court stated:

> I'm not going to enter a final judgment at this point because I don't believe it would be a final judgment. And I'm hopeful that very soon we will have . . . a dollar amount that we can use to do a final judgment. Everything points to that, and so I don't see necessarily rushing this before we have that, when I believe we can have that.
>
> . . . And it doesn't seem like this is an amount that's going to really be in controversy, at least I don't anticipate this . . . .
>
> . . . So I'm not going to enter a final judgment at this time. I am going to sign the order denying the motion for entry of judgment, just because it makes it

clear and puts in order that which was previously . . . a conclusion of law, which should have been an order.

1 VRP (May 16, 2023) at 71-72. The superior court's reasoning in May 2023 comports with the legal principles underlying final judgments. A final judgment must adjudicate all claims, rights, and liabilities of the parties. *Rose*, 104 Wn. App. at 120; *cf. Williams v. Snow*, 109 Wash. 329, 331, 186 P. 861 (1920) (stating "when the court is advised as to the facts in a case of which it has jurisdiction, it should apply the proper remedy, be it legal or equitable, since a party is not to be turned out of court if entitled to any relief under the pleaded facts" and affirming award of damages as alternative remedy where a party originally sued for equitable accounting). Following a final judgment, nothing should remain for the court but to execute that judgment. *Gronquist*, 177 Wn. App. at 397.

The Estate then proposed a judgment which included a reimbursement value based on an accounting provided by the CST trustee. However, during the August 2023 hearing, the superior court changed its mind, citing the failure of the Estate to comply with pleading and notice requirements. For the reasons discussed above, this was error.

The superior court then entered a final judgment, but the court again reserved the issue of reimbursement for future proceedings. The final judgment stated:

> [T]he right to proceeds from and any beneficial ownership of or claims to title to one half interest in [the Corner Property] is and shall remain in the name of Mary Evelyn Miller, or The Estate of Mary Evelyn Miller, free from any equitable claim of constructive trust in favor of The Gilbert Miller Testamentary Credit Shelter Trust or any [Beneficiaries] of The Gilbert Miller Testamentary Credit Shelter Trust: and it is further
>
> ORDERED, ADJUDGED AND DECREED that any issues of reimbursement to the Estate of Mary Evelyn Miller are reserved for future proceedings.

35

CP at 1029.

Because the final judgment reserved a key issue for further proceedings, not all claims, rights, and liabilities have been adjudicated; the final judgment is incomplete. *Rose*, 104 Wn. App. at 120. And because the Estate properly pleaded a claim for equitable accounting and reimbursement, there was no justification for apparently requiring the Estate to commence a new proceeding. *Id.*; *Gronquist*, 177 Wn. App. at 397. Thus, we reverse the superior court's entry of final judgment and remand for the superior court to order an equitable accounting and for further proceedings consistent with an adjudication that resolves all claims, rights, and liabilities.

ATTORNEY FEES

Both the Beneficiaries and the Estate request an award of attorney fees on appeal. Both argue that we should award them fees in the event they are the prevailing party.

Under RAP 18.1, a party may recover reasonable fees or expenses on review so long as applicable law grants a right to recovery. RAP 18.1(a). RCW 11.96A.150 provides:

> (1) Either the superior court or any court on an appeal may, in its discretion, order costs, including reasonable attorneys' fees, to be awarded to any party . . . . The court may order the costs, including reasonable attorneys' fees, to be paid in such amount and in such manner as the court determines to be equitable. In exercising its discretion under this section, the court may consider any and all factors that it deems to be relevant and appropriate, which factors may but need not include whether the litigation benefits the estate or trust involved.

Because an award of fees is discretionary, and a fee award under RCW 11.96A.150 lies in equity, and because the Estate is the prevailing party, we award fees to the Estate and decline to award fees to the Beneficiaries.

CONCLUSION

We affirm, in part, the superior court's judgment declining to impose a constructive trust on the Estate's interest in commercial property at issue. For the issue on cross-appeal, we reverse, in part, the judgment to the extent the superior court declined to reach remedial relief for the Estate and remand for the superior court to order an equitable accounting and for further proceedings consistent with an adjudication that resolves all claims, rights, and liabilities.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
L____, J.

We concur:

_____
Cruser, C.J.

_____
Veljacic, J.